14 CV 8307

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

**ALEXIA PALMER,** individually and on behalf of
All others similarly situated,

                             Plaintiffs,

      -against-

**TRUMP MODEL MANAGEMENT, LLC**
**CORRINE NICOLAS,** individually, and
**JANE OR JOHN DOE,** individually

                  Defendants

-----------------------------------------------------------X

Index No.

CLASS ACTION COMPLAINT

Jury Trial Demanded

RECEIVED
OCT 15 2014
U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff, Alexia Palmer, by her undersigned attorneys, for her class action complaint

against the Defendants, Trump Model Management, Corrine Nicolas, President of Trump Model

Management and John or Jane Doe, CEO of Trump Model management, collectively and

individually, allege upon information and belief, except as to the allegations that pertain to

Plaintiff which are alleged upon personal knowledge, as follows:

1. Plaintiff brings this class action, individually and on behalf of a class of similarly situated

    employees, to seek redress for systematic and repeated pattern of class-wide

    underpayment, and fraudulent misrepresentation, against Defendants, a modeling agency.

2. Defendants violated the provisions of the Fair Labor Standards Act (FLSA), applicable

    regulations and common law principles of contract and unjust enrichment, the

    Immigration and Nationality Act (INA), and the Racketeer Influenced Corrupt

    Organizations Act (RICO) by (1) failing to pay and perpetrating fraud on the Plaintiffs

3

and the Class they seek to represent the actual salary of $75,000.00 as stated in the Labor Condition Application (LCA) for Nonimmigrant Workers, (2) intentionally and fraudulently misrepresenting the actual salary on the LCA as mailed to the Department of Labor, and (3) failing to pay prevailing wage and/or the actual wage for the occupational classification.

3. On behalf of the Class, Plaintiff seeks unpaid wages, actual, incidental, consequential, and compensatory damages, pre-and post-judgment interest, and attorneys' fees and costs. To prevent recurrence of this conduct, Plaintiff also seeks injunctive relief on behalf of herself and the Class.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this cause of action because it presents a Federal question under the Immigration law of the United States (8 U.S.C. 1182 (n), (t)), RICO (18 U.S.C. §1962), FLSA (29 U.S.C. § 206), Mail and Wire Fraud (18 U.S.C. §§1341, 1343), and common law principles of contract and unjust enrichment.

5. This Court has jurisdiction over the Defendants because Defendants operate business in the State of New York, County of New York.

6. Venue in this Court is proper as Defendant regularly conducts business in the State of New York and has its office at 111 Eighth Avenue, New York, New York.

## PARTIES

7. Plaintiff Alexia Palmer, an individual residing at 104-11 200th Street, Saint Albans, NY 11412, is a model employed by Defendant to perform modeling contracts in New York via the Defendant.

4

8.  At all times relevant to this action, Defendant Trump Model Management ("TMM") was and is a corporation formed in accordance with the laws of the State of New York conducting business in the State of New York. TMM maintains a regular place of business at 111 Eighth Avenue, New York, NY 10011, and 155 Spring street, New York, NY 10012.

9.  At all times relevant to this action, President of TMM, Corrine Nicolas, and CEO of TMM, John or Jane Doe, have regularly conducted business on behalf of TMM at 155 Spring street, New York, NY 10012.

## CLASS ACTION ALLEGATIONS

10. Plaintiff brings this case pursuant to Civil Practice Law and Rules (CPLR) Article 9 on behalf of a class (the 'Class') consisting of all current and former models who came from foreign countries, were sponsored for H-1B visas, and did not receive compensations in accordance with the wages under the Federal Law for the period of six years preceding the filing of the complaint in this case, through the present (the 'Class Period').

11. The Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the identities of such persons are presently within the sole knowledge of the Defendants, there are at least hundreds of models employed by Defendants as of the date this Complaint was filed. Since the Class also includes former employees since the date six years before the filing of the complaint, the class is sufficiently numerous to warrant certification.

12. There are questions of law or fact common to the Class that predominate over any questions affecting individual members. Those questions include, but are not limited, to the following:

a.  whether Defendants have and are engaged in a pattern or practice of failing to pay fair wages as per the FLSA and the Immigration Laws;

b.  whether Defendants have and are engaged in a pattern of mail fraud where they knowingly misrepresented facts as pertaining to actual wages paid to their employees;

c.  whether Defendants have and are engaged in a pattern of breaching contracts with their employees;

d.  whether Defendants were unjustly enriched by their wage policies;

e.  whether Defendants should be enjoined from continuing the alleged wrongful practices in violation of applicable laws and regulations; and

f.  the proper amount of damages for the type of injury and losses commonly suffered by Plaintiff and the Class.

13. Plaintiff's claims are typical of the claims of the Class, because they are all current or former models employed by the Defendants who sustained damages as a result of Defendants' fraudulent compensation policies and practices. The defenses that likely will be asserted by Defendants against Plaintiff are typical of the defenses that Defendants will assert against the Class members.

14. Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel experienced in pursuing complex and class action litigation who will adequately and vigorously represent the interests of the class.

15. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Treating this as a class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expenses that

numerous individual actions would entail. As a practical matter, absent a class action, class members would be reluctant to file individual claims for fear of retaliation. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class is readily identifiable from records that Defendants are legally required to maintain.

16. No individual class member has any interest in individually controlling the prosecution of a separate individual action. No other suits or complaints have been filed by any class member. In order to pursue these claims in a class action, Plaintiff is waiving any claim on her own behalf or on behalf of the Class in this lawsuit for liquidated damages.

17. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.

18. Defendants have acted, or failed to act, on grounds generally applicable to the Class.

19. Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue a course of action which will result in further damages to Plaintiff and the members of the Class.

## STATEMENTS OF FACTS

20. Plaintiff worked as a model on modeling contracts secured through the Defendants and hence was Defendants' employee approximately from January 2011 to May 2014. Plaintiff was under the sole control of the Defendants for all modeling contracts she performed in New York during such time.

7

21. Plaintiff worked on twenty one (21) different projects through TMM from approximately January 2011 to December 2013.

22. The Defendants, withheld its twenty percent (20%) agency fees and charged Plaintiff for obscure expenses, despite the fact that the Plaintiff was already being charged for simple, insignificant expenses postage and makeup kits.

23. In addition, Plaintiff was sent to dermatologist upon the Defendants' recommendation; she was asked to take walking lessons, constantly supplied with numerous unnecessary cosmetics kits, and made to take expensive limousines, all at Plaintiff's expense.

24. After deductions of all agency fees, expenses, and allowance, the Plaintiff received a check in the amount of $3,880.75 for all the work she did from 2011 to 2013.

25. Defendants mailed out an H-1B application with an approved LCA which stated that Defendants were going to pay the Plaintiff a total of 75,000 a year.

26. Despite an assertion to pay Plaintiff well above the required wage at $75,000 per year as asserted by the Defendants in the LCA application, the Defendants even failed to pay her even the prevailing wage of $45,490 per year as required by Immigration laws.

27. By mailing such LCA application Defendants committed mail fraud under RICO and as the Plaintiff's employer, breached the contractual agreement with the Plaintiff as well.

28. Defendants' actions, as alleged herein, were intentional and not made in good faith.

## CLAIMS FOR RELIEF

### COUNT I

**(Racketeer Influenced and Corrupt Organization Act & Mail and Wire Fraud)**

29. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

30. The mail and wire fraud statute (18 U.S.C. §§ 1341, 1343) makes it criminal for anyone to use the mails or wires in furtherance of a scheme to defraud. The fraudulent statements themselves need not be transmitted by mail or wire; it is only required that the scheme to defraud be advanced, concealed or furthered by use of the U.S mail or wires.

31. In addition, 18 U.S.C. § 1962(c) provides a private cause of action for RICO to an injured person where the conduct of an enterprise created a pattern of racketeering activity that was the proximate cause of the individual's harm.

32. The LCA application and the H-1B petition mailed on behalf of the Plaintiff stated that the Defendants would pay her a yearly salary of $75,000 when in reality, Plaintiff was only paid $3,880.75 for 3 years of her working with the Defendants.

33. The Defendants made intentional misrepresentation to pay the Plaintiff $75,000 when in fact; the Defendants had no intention of doing so. Such misrepresentation was made solely to evade immigration laws and to perpetrate Defendants' fraudulent scheme of exploiting non-immigrant workers by grossly underpaying them.

34. Defendants have engaged in pattern of such mail and wire fraud by filing H-1B applications for the Plaintiff and other models similarly situated and thus violated RICO. The mailing of the H-1B applications was to supplement the Defendants' fraudulent scheme of underpaying foreign workers and exploiting them.

35. In addition, Plaintiff was asked to sign a separate contract, which explicitly stated that Plaintiff would be responsible for all expenses and that such expenses would be directly taken from her paycheck by the Defendant. This was a cover up that Defendants needed to exploit the Plaintiff and such was indeed the case. Defendants took more than 80% of Plaintiff's hard earned money by cloaking it as "expenses."

9

36. Lastly, the lure of a higher wage of $75,000, well above the legally required prevailing wage of $45, 490 per year, was done merely to get models to agree to work for the Defendants while the Defendants would later 'offset' such outlandish wage offer by directly withholding money from the Plaintiff for obscure expenses.

37. Defendants' misrepresentation was intentional and willful.

## COUNT II

### (Common Law Breach of Contract)

38. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

39. A valid common law contractual agreement was formed when the Defendants agreed to petition a non-immigrant visa for the Plaintiff. In addition to the LCA application, a separate contract was also signed by the Plaintiff and the Defendants.

40. Despite the fact that the separate contract expressly states that there is no employer/employee or agency relationship, the Defendants' actions clearly establish an employer/employee relationship.

41. The separate contract gives express power to the Defendants to sign releases on behalf of the Plaintiff, to collect monies on behalf of the plaintiff, to endorse monetary and other negotiable instruments on behalf of the Plaintiff. The contract expressly provides for the Defendants to receive a 20% commission on all modeling contracts that it is able to secure for the Plaintiff. Clearly such control and authority over the Plaintiff for all her career opportunities in New York establishes that there is an employer/employee relationship or an agency relationship at the least.

10

42. As an employer, Defendants owe a fiduciary duty to the Plaintiff. They breached this fiduciary duty by charging Plaintiff for fictitious expenses and failing to pay the Plaintiff the agreed upon wage of $75,000.

43. Under the contract, Defendants were the exclusive manager for the Plaintiff in New York and solely responsible for selection of career opportunities, publicity, public relations, advertising and other matters related to the Plaintiff's professional career. Defendants breached this duty by failing to gain employment opportunities for the Plaintiff.

44. Defendants' breach of the contract was intentional.

## COUNT III

### (Unjust Enrichment)

45. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

46. Defendants promised Plaintiff a salary of $75,000 per year in consideration for her exclusive work with TMM.

47. The Defendants deliberately failed to pay the agreed upon wages.

48. Defendants benefitted from Plaintiff's work on numerous modeling jobs but failed to pay Plaintiff a just compensation for her work on those modeling jobs.

49. Thus, the Defendants have been unjustly enriched.

## COUNT IV

### (Violation of FLSA)

50. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

11

51. As stated above in paragraphs 40 and 41, there was an employer-employee relationship between the Plaintiff and the Defendants.

52. The FLSA (29 U.S.C. § 206) requires that an employee be paid a minimum of $7.25 per hour.

53. Defendants, in gross violation of the FLSA, paid Plaintiff, a mere amount of $3,880.75 for 3 years.

54. Hence, the Defendants violated the FLSA.

### COUNT V

### (Fraud)

55. A party has a cause of action for common law fraud when representation of fact; was made, the representation was material and the person relied on the representation, the person making the representation knew of its falsity and the injured party suffered as a result of the reliance of such false representation.

56. Defendants, while promising to pay the Plaintiff $75,000 per year, directly took from her paycheck hidden costs and overhead fees, intended solely to defraud the Plaintiff and by-pass the laws of the United States.

57. The Defendants promised the Plaintiff a salary of $75,000 without any intent of paying her but only with the desire to get her modelling services.

58. Defendants thus, fraudulently made misrepresentations and the Plaintiff relied on those fraudulent misrepresentations and provided services to the Defendants.

59. Further, by signing a separate contract with the Plaintiff, without notifying Immigration of such a contract, the Defendants have defrauded the Plaintiff by circumventing laws.

60. Defendants' unconscionable acts are fraudulent and were done intentionally.

## COUNT VI

### (Prevailing Wage and Back Pay of Unpaid Wages)

61. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

62. 8 U.S.C. § 1182 (n), (t)  mandate that an employer pay employees either at the actual wage level paid by the "employer to all other individuals with similar experience and qualifications for the specific employment in question" or "the prevailing wage level for the occupational classification in the area of employment," whichever is greater.

63. Defendants attested in the LCA that the Defendants were willing to pay the Plaintiff a yearly wage of $75,000, above and beyond the prevailing wage set at $45, 490 per year. However, from 2011-2014, Plaintiff has earned a total amount of $3,880.75.

64. Defendants have outlandishly underpaid the Plaintiff in gross violation of Immigration laws whereby Defendants knowingly took advantage of the Plaintiff.

65. As per 8 U.S.C. § 1182(n), (t), when an employer, after notice and hearing, is found not to have paid wages at the wage level specified in the attestation, the employer shall be ordered to provide payment of such amounts of back pay. As such,  Defendants owe the Plaintiff a total of $225,000 in back pay.

66. Defendants' failure to comply with the Immigration laws caused the Plaintiff to suffer insurmountable loss of wages.

67. Defendants' failure to comply with the Immigration laws was willful.


WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully request that this Court grant the following relief:

13

A.  Allow this action to proceed as a class action under CPLR Article 9 for all claims alleged, designate Plaintiff as the representative of the class and the undersigned counsel as counsel for the class;

B.  Enter judgment against Defendants and in favor of Plaintiff and each member of the Class, in the amount of their individual unpaid wages, actual and compensatory damages, and pre-and post-judgment interest as allowed by law and enjoin Defendants from future violations;

C.  Award Plaintiff the attorneys' fees and costs incurred in this litigation; and

D.  Grant Plaintiffs such further relief as this Court deems just and proper.

Dated: October 2, 2014
Ozone Park, New York

Naresh M. Gehi
Gehi & Associates
104-05 Liberty Avenue
Ozone Park, NY 11417

14