UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

**ALEXIA PALMER,** individually and on behalf of
others similarly situated,

                             Plaintiffs,

    -against-

**TRUMP MODEL MANAGEMENT, LLC
CORRINE NICOLAS,** individually, and
**JANE OR JOHN DOE,** individually

                            Defendants

-------------------------------------------------------------X

Index No. 14-CV-8307

**AMENDED CLASS
ACTION COMPLAINT**

**Jury Trial Demanded**

      Plaintiff, Alexia Palmer, by her undersigned attorneys, individually and on behalf of others similarly situated, alleges upon information and belief, except as to the allegations that pertain to Plaintiff, which are alleged upon personal knowledge, as follows:

1. Plaintiff brings this collective and class action against the Defendants—Trump Model Management ("TMM"), Corrine Nicolas, President of Trump Model Management, and John or Jane Doe, CEO of Trump Model Management—to seek redress for the systematic and repeated pattern of class-wide underpayment and fraudulent misrepresentation.

2. Defendants violated the provisions of the Fair Labor Standards Act ("FLSA"), applicable regulations, common law principles of contract and unjust enrichment, the Immigration and Nationality Act ("INA"), and the Racketeer Influenced Corrupt Organizations Act ("RICO") by (1) failing to pay and perpetrating fraud on the Plaintiffs by promising a salary of $75,000.00, as evidenced in the Labor Condition Application ("LCA") for

1

Nonimmigrant Workers, (2) intentionally and fraudulently misrepresenting the actual salary on the LCA as mailed to the Department of Labor, and (3) failing to pay prevailing wage and/or the actual wage for the occupational classification.

3. On behalf of herself and others similarly situated, Plaintiff seeks unpaid wages, actual, incidental, consequential, and compensatory damages, pre-and post-judgment interest, and attorneys' fees and costs. To prevent recurrence of this conduct, Plaintiff also seeks injunctive relief on behalf of herself and similarly situated employees.

4. Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*, on behalf of herself and similarly situated current and former models employed by TMM who want to opt-in to this action, pursuant to the collective action mechanism of 29 U.S.C. §216(b).

5. Plaintiff also brings this action on behalf of herself and similarly situated current and former models employed by TMM, pursuant to Rule 23 of the Federal Rules of Civil Procedure, under RICO, common law of breach of contract, unjust enrichment, and fraud.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1331, because it presents a Federal question under FLSA (29 U.S.C. § 206), RICO (18 U.S.C. §1962), and Mail and Wire Fraud (18 U.S.C. §§1341, 1343). The Court also has supplemental jurisdiction over the Plaintiff's common law claims pursuant to 28 U.S.C. §1367.

7. In addition, the Court has jurisdiction over this Plaintiff's FLSA claim pursuant to 29 U.S.C. §216(b).

8. This Court has personal jurisdiction over the Defendants because the Defendants operate their business in the State of New York.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b). The Defendant regularly conducts business in the State of New York and has its office at 111 Eighth Avenue, New York, New York.

## PARTIES

10. Plaintiff Alexia Palmer—an individual residing at 104-11 200th Street, Saint Albans, NY 11412—is a model employed by Defendant to perform modeling contracts in New York via the Defendant.

11. At all times relevant to this action, Defendant Trump Model Management ("TMM") was and is a corporation formed in accordance with the laws of the State of New York, and it conducts business in the State of New York. TMM maintains a regular place of business at 111 Eighth Avenue, New York, NY 10011, and 155 Spring street, New York, NY 10012.

12. At all times relevant to this action, President of TMM, Corrine Nicolas, and CEO of TMM, John or Jane Doe, have regularly conducted business on behalf of TMM at 155 Spring street, New York, NY 10012.

## COLLECTIVE ACTION ALLEGATIONS

13. Plaintiff brings FLSA claims on behalf of herself and other employees similarly situated, as authorized by 29 U.S.C. §216(b).

14. The similarly situated employees are persons who are or have been employed by TMM as models and who (1) came from foreign countries, (2) were sponsored for H-1B visas, and (3) did not receive compensation in accordance with the FLSA for a period of three years prior to the filing of the complaint ("FLSA Class").

15. The FLSA Class members are know to the Defendants and can be located through TMM's records. The FLSA Class members would benefit from the issuance of a court-supervised notice and the opportunity to opt-in and join the present lawsuit. Notice should be sent to the FLSA Class pursuant to 29 U.S.C. §216(b).

16. The FLSA Class Period runs for a period no less than three years prior to the filing of this Complaint and through the final disposition of this action (the "FLSA Class Period").

17. Defendants are liable for failing to properly compensate the Plaintiff and the FLSA Class members under FLSA.

## CLASS ACTION ALLEGATIONS

18. Plaintiff also brings this case pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of all current and former models who came from foreign countries, were sponsored for H-1B visas, and did not receive compensations in accordance with the wages under Federal Law for a period of six years preceding the filing of the complaint in this case and up to the present (the "Class Period").

19. <u>Numerosity</u>: The Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the identities of such persons are presently within the sole knowledge of the Defendants, there are at least hundreds of models employed by the Defendants as of the date of the filing of this complaint. Since

the Class also includes former employees, from six years prior to the filing of this complaint, the class is sufficiently numerous to warrant certification.

20. Commonality: There are questions of law or fact common to the Class that predominate over any questions affecting individual members. Those questions include, but are not limited, to the following:

   a. whether the Defendants have and are engaged in a pattern or practice of failing to pay fair wages as per the FLSA and Immigration Laws;

   b. whether the Defendants have and are engaged in a pattern of mail fraud where they knowingly misrepresent facts pertaining to the actual wages paid to their employees;

   c. whether the Defendants have and are engaged in a pattern of breaching contracts with their employees;

   d. whether the Defendants were unjustly enriched by their wage policies;

   e. Whether the Defendants should be enjoined from continuing the alleged wrongful practices in violation of applicable laws and regulations; and

   f. the proper amount of damages for the type of injury and losses commonly suffered by Plaintiff and the Class.

21. Typicality: Plaintiff's claims are typical of the claims of the Class, because the Class comprises of current or former models employed by the Defendants who sustained damages as a result of the Defendants' fraudulent compensation policies and practices. The defenses that likely will be asserted by the Defendants against Plaintiff are typical of the defenses that the Defendants will assert against the Class members.

22. Adequacy: Plaintiff will fairly represent and adequately protect the interests of the Class.

23. Plaintiff has retained counsel experienced in pursuing complex as well as class action litigation who will adequately and vigorously represent the interests of the class.

24. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Treating this as a class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expenses that numerous individual actions would entail. As a practical matter, absent a class action, class members would be reluctant to file individual claims for fear of retaliation. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class is readily identifiable from the records that the Defendants are legally required to maintain.

25. No individual class member has any interest in individually controlling the prosecution of a separate individual action. No other suits or complaints have been filed by any class member. In order to pursue these claims in a class action, the Plaintiff is waiving any claim on her own behalf or on behalf of the Class in this lawsuit for liquidated damages.

26. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual members of the Class that would establish incompatible standards of conduct for the Defendants.

27. Defendants have acted, or failed to act, on grounds generally applicable to the Class.

28. Without a class action, the Defendants will likely retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the members of the Class.

## STATEMENTS OF FACTS

29. Plaintiff worked as a model on modeling contracts secured through the Defendants and, hence, was the Defendants' employee approximately from January 2011 to May 2014. Plaintiff was under the sole control of the Defendants for all modeling contracts she performed in New York during such time.

30. Plaintiff worked on twenty one (21) different projects through TMM from approximately January 2011 to December 2013.

31. The Defendants withheld its twenty percent (20%) agency fees and charged the Plaintiff for obscure expenses, despite the fact that the Plaintiff was already being charged for simple, insignificant expenses, postage, and makeup kits.

32. In addition, the Plaintiff was sent to a dermatologist upon the Defendants' recommendation; she was asked to take walking lessons, constantly supplied with numerous, unnecessary cosmetics kits, and made to take expensive limousines, all at the Plaintiff's expense.

33. After the deduction of all agency fees, expenses, and allowance, the Plaintiff received a check in the amount of $3,880.75 for all the work she did from 2011 to 2013.

34. Defendants mailed out an H-1B application with an approved LCA which stated that Defendants were going to pay the Plaintiff a total of $75,000 a year.

35. The Plaintiff was asked to sign a separate contract which explicitly stated that she would be responsible for all expenses and that such expenses would be taken directly from her paycheck.

36. Defendants took more than 80% of the Plaintiff's hard earned money by cloaking it as "expenses."

37. Despite an assertion to pay the Plaintiff well above the required wage—as evidenced in the LCA application promising to pay her $75,000 per year—the Defendants failed to pay her even the prevailing wage of $45,490 per year as required by Immigration laws.

38. By mailing such LCA application, the Defendants committed mail fraud under RICO, and as the Plaintiff's employer, they breached their contractual agreement with the Plaintiff as well.

39. The Defendants' actions, as alleged herein, were intentional and not made in good faith.

**CLAIMS FOR RELIEF**

**COUNT I**
**(Violation of FLSA)**
**(Brought on Behalf Plaintiff and all FLSA Class Members)**

40. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

41. As stated above in paragraphs 29 and 30, there was an employer-employee relationship between the Plaintiff and the Defendants.

42. The FLSA (29 U.S.C. §206) requires that an employee be paid a minimum of $7.25 per hour.

43. Defendants, in gross violation of the FLSA, paid the Plaintiff a mere amount of $3,880.75 for all the work she performed over a period of 3 years.

44. Hence, the Defendants willfully and intentionally violated the FLSA.

45. Since the Defendants' acts were willful and intentional, a three year statute of limitations, pursuant to 29 U.S.C. §255, applies.

46. The Defendants' willful actions entitle the Plaintiff and the FLSA Class members to recover the federal minimum wage, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §216(b).

### COUNT II
### (Racketeer Influenced and Corrupt Organization Act & Mail and Wire Fraud)
### (Brought on Behalf of the Plaintiff and the Class)

47. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

48. The mail and wire fraud statute (18 U.S.C. §§ 1341, 1343) makes it criminal for anyone to use the mails or wires in furtherance of a scheme to defraud. The fraudulent statements themselves need not be transmitted by mail or wire; it is only required that the scheme to defraud be advanced, concealed or furthered by use of the U.S mail or wires.

49. In addition, 18 U.S.C. § 1962(c) provides a private cause of action for RICO to an injured person where the conduct of an enterprise creates a pattern of racketeering activity that is the proximate cause of the individual's harm.

50. The LCA application and the H-1B petition mailed on behalf of the Plaintiff stated that the Defendants would pay her a yearly salary of $75,000; in reality, the Plaintiff was only paid $3,880.75 for her 3 years of working with the Defendants.

51. The Defendants made intentional misrepresentation to pay the Plaintiff $75,000 when, in fact, the Defendants had no intention of doing so. Such misrepresentation was made solely to evade immigration laws and to perpetrate the Defendants' fraudulent scheme of exploiting non-immigrant workers by grossly underpaying them.

52. The Defendants have engaged in a pattern of such mail and wire fraud by filing H-1B applications for the Plaintiff and other models similarly situated. They have, thus, violated RICO. The mailing of the H-1B applications was to supplement the Defendants' fraudulent scheme of underpaying foreign workers and exploiting them.

53. In addition, the Plaintiff was asked to sign a separate contract, which explicitly stated that the Plaintiff would be responsible for all expenses and that such expenses would be directly taken from her paycheck by the Defendant. This was a cover up that Defendants needed to exploit the Plaintiff and such was indeed the case. Defendants took more than 80% of Plaintiff's hard earned money by cloaking it as "expenses."

54. Lastly, the lure of a high wage of $75,000—well above the legally required prevailing wage of $45,490 per year—was done merely to get models to agree to work for the Defendants while the Defendants would later "offset" the wage offered by directly withholding money from the Plaintiff for obscure expenses.

55. Defendants' misrepresentation was intentional and willful.

### COUNT III
### (Common Law Breach of Contract)
### (Brought on Behalf of the Plaintiff and the Class)

56. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

57. A valid, common law contractual agreement was formed when the Defendants agreed to petition a non-immigrant visa for the Plaintiff. In addition to the LCA application, a separate contract was also signed by the Plaintiff and the Defendants.

58. Despite the fact that the separate contract expressly states that there is no employer/employee or agency relationship, the Defendants' actions clearly establish an employer/employee relationship.

59. The separate contract gives express power to the Defendants to sign releases on behalf of the Plaintiff, to collect monies on behalf of the plaintiff, and to endorse monetary and other negotiable instruments on behalf of the Plaintiff. The contract expressly provides for the Defendants to receive a 20% commission on all modeling contracts that it is able to secure for the Plaintiff. Clearly such control and authority over the Plaintiff for all her career opportunities in New York establishes that there is an employer/employee relationship or an agency relationship at the very least.

60. As the employer, the Defendants owe a fiduciary duty to the Plaintiff. They breached this fiduciary duty by charging the Plaintiff for fictitious expenses and by failing to pay the Plaintiff the agreed upon wage of $75,000 per year.

61. Under the contract, the Defendants were the exclusive manager for the Plaintiff in New York and were solely responsible for the selection of career opportunities, publicity, public relations, advertising, and other matters related to the Plaintiff's professional career. The Defendants breached this duty by failing to procure employment opportunities for the Plaintiff.

62. Defendants' breach of the contract was intentional.

## COUNT IV
### (Unjust Enrichment)
### (Brought on Behalf of the Plaintiff and the Class)

63. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

64. The Defendants promised the Plaintiff a salary of $75,000 per year in consideration for her exclusive work with TMM.

65. The Defendants deliberately failed to pay the agreed upon wages.

66. The Defendants benefitted from the Plaintiff's work on numerous modeling jobs but failed to pay the Plaintiff a just compensation for her work on those modeling jobs.

67. Thus, the Defendants have been unjustly enriched.

## COUNT V
### (Fraud)
### (Brought on Behalf of the Plaintiff and the Class)

68. A party has a cause of action for common law fraud when (1) representation of fact was made, (2) the representation was material and the person relied on the representation, (3) the person making the representation knew of its falsity, and (4) the injured party suffered as a result of the reliance of such false representation.

69. Defendants—while promising to pay the Plaintiff $75,000 per year—directly took from her paycheck hidden costs and overhead fees, intended solely to defraud the Plaintiff and by-pass the laws of the United States.

70. The Defendants promised the Plaintiff a salary of $75,000 without any intent of paying her but only with the desire to get her modeling services.

71. Defendants, thus, made fraudulent misrepresentations, and the Plaintiff relied on those fraudulent misrepresentations and provided services to the Defendants.

72. Further, by signing a separate contract with the Plaintiff, without notifying the appropriate immigration authorities of the separate contract, the Defendants defrauded the Plaintiff by circumventing laws.

73. Defendants' unconscionable acts are fraudulent, and they were committed intentionally.

WHEREFORE, Plaintiff, on behalf of herself and others employees similarly situated, respectfully request that this Court grant the following relief:

A. The Plaintiff should be allowed to give notice of the collective action to the Defendants' current and former employees, who came from foreign countries, were sponsored for H-1B visas, and did not receive compensation in accordance with the FLSA during the three year period preceding the filing of this suit and up to the date of the Court's issuance of court-supervised notice. Such notice will advise them that this action has been filed, the nature of the action, and of their right to opt-in and join this lawsuit.

B. Award the minimum wages payable to the Plaintiff and the FLSA Class members with an additional and equal amount of liquidated damages, pursuant to 29 U.S.C. §§201 *et. seq.* and the supporting United States Department of Labor Regulations.

C. Allow this action to proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, designate the Plaintiff as a representative of the Class, and designate the undersigned counsel as counsel for the Class;

D. Enter judgment against Defendants and in favor of Plaintiff and members of the Class, in the amount of their individual unpaid wages, actual and compensatory damages, and pre- and post-judgment interest as allowed by law and enjoin Defendants from future violations;

E. Award Plaintiff the attorneys' fees and costs incurred in this litigation; and

F. Grant Plaintiffs such further relief as this Court deems just and proper.

Dated: October 29, 2014
Ozone Park, New York

                                              s/ Naresh Gehi
                                              Naresh M. Gehi, Esq.
                                              Gehi & Associates
                                              104-05 Liberty Avenue
                                              Ozone Park, NY 11417
                                              Ph: (718) 263-5999
                                              Fax: (718) 263-1685
                                              nmgehi@gmail.com