# GEHI & ASSOCIATES
## ATTORNEYS & COUNSELORS AT LAW

THE PICKMAN BUILDING · 118-21 QUEENS BLVD., · SUITE 409· FOREST HILLS, NY 11375
TEL: (718) 263-5999 · FAX: (718) 263-1685

January 28, 2015

**VIA ECF**

Honorable Annalisa Torres

United States District Court

Southern District of New York

500 Pearl Street

New York, NY 1007

Re: Palmer v. Trump Model Management LLC., *et al.*

14 Civ. 8307 (AT)

Dear Judge Torres:

We represent the plaintiff Alexia Palmer in the above-entitled action, and write in opposition to the defendants' request for a pre-motion conference. In the request, defendants outlined their intention to seek dismissal of each and every cause of action in the complaint. Plaintiff refutes the defendants' contentions in their entirety and submits that sufficient question of fact exists for the case to proceed to trial. Specifically, plaintiff reiterates that defendant engaged in fraudulent conduct with respect to class plaintiff's H-1B3 visa application, and that such fraudulent behavior is representative of a repeated course of conduct designed to unjustly enrich defendant.

## PROCEDURAL POSTURE

In the statement of procedural posture appended to a defendants' letter requesting pre-motion conference, defendants outlined the original filing of the Complaint, their response letter (as per Your Honor's individual practices) of December 12, 2014, and the filing of an Amended Complaint. The statement went on to detail that on December 29th, Your Honor ordered that the Second Amended Complaint be filed by January 5, 2015, which it was, and that defendants file the above-referred to request for a pre-motion conference by January 26th. Plaintiffs now respond to the request for the pre-motion conference.

## BACKGROUND

The defendants' background statement indicates that "Distilled to its essence, this action is nothing more than a garden variety claim for breach of contract..." with what are characterized as "alleged" minimal damages of "...about $12,000 or less." Defendant's background statement then attempts to reduce plaintiff's case, which alleges a complex and fraudulent scheme to submit fraudulent H1B3 visa applications which contained salary promises the defendant never intended to comply with, to a simple contractual dispute. Plaintiff is a fashion model of international acclaim, as is required for a visa, and was brought to this country with a three-year, $75,000 per annum contract; of that promised salary, she has received $3880.

Thus, the case is anything but simple. Defendant's background statement further attempts to reduce the six causes of action pleaded in the complaint to two simple claims advanced in several forms; one, that defendant Trump Model Management (Hereinafter TMM) violated the wage provisions of Section 1182 (n) of the Immigration and Nationality Act by failing to pay the plaintiff the amount set forth in the Labor Condition Application (LCA); and that TMM deducted expenses from the fees finally paid to plaintiff that constituted a breach of the agreement between the parties.

This is a vast oversimplification of the facts of the matter. Defendant attempts to reduce allegations of RICO violations, fraud, unjust enrichment, conversion, breach of contract and violation of the Fair Labor Standards Act to a breach of contract with minimal damages. This is a patent mischaracterization of the claims advanced by plaintiff, and is an attempt to steer attention away from the course of fraudulent conduct engaged in by defendants with respect to the preparation of false LCAs and H1B3 visa applications that contain falsehoods designed to induce the government into granting H1B3 visas that otherwise would not be granted. * Arguendo, this type of activity constitutes immigration fraud.

---

*In passing, let it be noted that similar conduct – falsification of the amounts paid to an employee on an LCA was what caused the arrest, indictment and removal of Indian diplomat Dr. Devyani Khobrgade and the subsequent international incident.

## A. First Cause of Action

Plaintiff's first cause of action is based on the failure of defendant to pay her the minimum as set forth in the FLSA (the Fair Labor Standards Act, which controls the minimum wage). Defendant first argues, citing Bojaj v. Moro Food Corp., 2014 WL 6055771, *4 (S.D.N.Y. November 13, 2104) and 29 U.S.C. Sec. 216, that the relationship between plaintiff and defendant was not a relationship of employer to employee, but was instead an arm's length commercial business relationship and for that reason, the FLSA is inapplicable. Bojaj deals with a group of pizza restaurant employees who were not compensated by the restaurants that employed them; the circumstances of the instant matter could hardly be more different. Here, plaintiff had an exclusive contract with Trump Model Management with "...respect to selection of career opportunities, publicity, public relations, advertising and other matters, relating to my professional career in the modeling, advertising, promotion, entertainment and similar fields." As such, plaintiff and defendant stood in the relationship of employee and employer during the time of the contract, from January 2011 until January of 2014. Moreover, and most importantly, defendant affirmed on the H1B3 application that plaintiff would be receiving a yearly salary of approximately $75,000, which is commensurate or greater than the yearly earnings of other similarly situated fashion models. Without this sworn statement, the visa would not have been granted. Please see, Plaintiff's exhibit A: LCA; see also, Plaintiff's exhibit B; H1-B petition.

1. Employer-employee relationship

The essence of a sponsor for the purposes of an H-1B3 is that of an employer, a guarantor of the figure put forth in the LCA; an employee-employer relationship is created by virtue of the sponsorship. Moreover, at one point, plaintiff's immigration attorney Rafael A. Barretto, Esq, referred to plaintiff's "salary of **$75,000 per year.**" (emphasis in original); please see, Plaintiff's exhibit C. Moreover, Ms. Corinne Nicholas, president of Trump Model Management, in an April 12, 2011 letter, described plaintiff as an employee; she wrote "We will employ her as a Fashion Model for a temporary period of three (3) years. Please see, Plaintiff's exhibit D. Also, please note that taxes were withheld from the monies eventually received by plaintiff in the amount of $6,780; taxes are generally not withheld from independent contractors or agents.

2. Employer's Responsibility to keep track of hours under 29 CFR 516

Defendant further contends that plaintiff's claim under the FLSA must be dismissed because she "...failed to specifically set forth in her Second Amended Complaint the number of hours that she purportedly worked during the relevant time period." *Bojaj v, Moro Food Corp., 2014 WL 6055771*, this is premature, in that defendant asks for plaintiff to stipulate to a certain number of jobs in the Defendant's Request for Admissions. Yet even without this, defendant tried to analogize the facts of the instant matter to the facts of Bojaj, and again, defendant fails. Initially, fashion modelling is not scalable in the same way that pizza production is; however, in the sense that all forms of employment can in some way be reduced to time, a calculation of the approximate hours spent by plaintiff on modeling in

the subject time period could be done. Secondly, under 29 CFR 516, the employer must, under the FLSA, keep track of hours worked by the employee. Thus, until evidence is adduced that will enable such a time-hour calculation for purposes calculating to see if the minimum wage was paid on not, arguing that dismissal is warranted because of its absence is not convincing; such a matter is clearly the province of the trier of fact.

### 3. Second Cause of Action

Defendant then asserts that plaintiff's RICO claim must be dismissed, arguing that "(p)laintiff's second cause of action is a futile attempt to recast an alleged violation of Section 1182 (n) of the INA (i.e. that TMM did not pay her in accordance with the LCA) and a garden variety breach of contract claim (i.e. that TMM was not entitled to deduct certain expenses) as RICO violations." However conclusory this statement may be, it is still a matter for the trier of fact to decide; essentially, the defendant attempts to bundle the defenses into another conclusory argument lifted from Gordon v. Kaleida Health, 847 F. Supp. 2d 479, 489 (W.D. N.Y. 2012), in which a federal court in Buffalo held that "(c)ourts *in this circuit* (emphasis supplied) routinely have found federal RICO claims precluded where the source of the asserted right is covered by a more detailed federal statute." Defendant goes on to argue that no RICO "enterprise" has been identified. However, the prevailing legal authorities, federal statue and the Supreme Court, have provided us with guidance. 18 U.S.C. § 1961(4) provides that the term "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, *and any union or group of individuals associated in fact although not a legal entity.*" In *United States v. Turkette*, 452 U.S. 576, 583 (1981), the Supreme Court ruled that an enterprise "is proved by evidence of an ongoing organization, *formal or informal*, and by evidence that the various associates *function as a continuing unit*." Trump Modelling is an organization, and certainly meets the "enterprise" requirement. Defendant then cites Mack v. Parker Jewish Institute for Health Care and Rehabilitation, 2014 WL 5529746 at *1(E.D.N.Y. Oct. 30, 2014), which contains language to this effect: "(b)ecause a corporation may only function through the actions of its employees and agents, together with the corporation, do not form an enterprise, distinct from the corporation itself." Mack, at 1., for the proposition that

   1. Defendant as RICO Enterprise

Discerning precisely the point the defendants are trying to make here is difficult. If they are arguing that the corporation itself cannot be a RICO enterprise, this seems to fly in face of the statutory definition; if they are saying that the requirements for a RICO enterprise cannot be met when the President Ms. Nicholas is taken together with the corporation, this seems equally illogical. Whatever the case, though, the defendants whole or in part seem to satisfy the definition, and even if there is room for argument, this argument, once again, seems to be for the decider of fact; it does not rise to the standard of Ashcroft for motions to dismiss: that it "fails plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 570 (2007).

### 4. Third Cause of Action

The defendants attack the third cause of action, breach of contract, as a recasting of the argument advanced with respect to the RICO claims: that since TMM was under no obligation to pay plaintiff in accordance with the figure of $75,000 per annum set forth in the LCA, this was not a "salary." Yet the figure of $75,000 promised to plaintiff, which was well above the prevailing wage of approximately $45,490 for the same work at the same time, was precisely what induced plaintiff to uproot herself from her home country and come to the United States under exclusive contract to model for TMM. Defendant argues that merely because the figure of $75,000 was listed on the LCA and H1B3 applications, that the plaintiff is estopped from alleging breach of contract. The existence of an enforceable contract that conforms to the terms sworn to in the H1B3 by defendant and whether such contract has been breached is a matter for the trier of fact; defendant wishes to preliminarily absolve itself of liability because the terms of the contract agreed to by plaintiff and defendant were recorded in the immigration filings. This is a specious argument, and should not be grounds for dismissal.

1. No breach of contract in re: deductions

The defendants also argue that no breach of contract claim can stand with respect to deductions of expenses from her wages in violation of the Management Agreement and Expense Agreement, claiming that plaintiff failed to identify which expenses were deducted improperly from her compensation. The Expense Agreement contract refers to "...airfares, testing photos and development, promotional books, messenger fees, rent fees, car service and similar expenses. And while the complaint does not specify precisely which expenses (such as "walking lessons - Connie Fleming") plaintiff alleges were deducted in breach of the agreement, the complaint does refer to a very specific figure with respect to deduction, a figure that is high enough to shock the conscience with respect to deductions; see, Second Amended Complaint, 53.

With respect to the last points advanced by the defense, that plaintiff's claims fail based on breach of contract, unjust enrichment, fraud and conversion, the defense, in the request for pre-motion conference, chooses to attempt to attack plaintiff's claims by virtue of the same argument: that the failure of defendant to pay plaintiff the $75,000 per annum specified in the LCA is not actionable by plaintiff, inasmuch as the "...plaintiff has no private right of action under the INA and that cannot circumvent clearly established law by classifying her claim as one for breach of contract." Again, defendant is advancing the specious argument that because the terms of a contract were memorialized in the LCA, that the plaintiff is estopped from pleading breach of contract.

### 5. Fourth, Fifth and Sixth Causes of Action

Defendant advances more or less the same arguments against these three causes of action, saying Plaintiff is merely "recasting" the "alleged INA claim" (by which it means the failure to pay the agreed-upon salary of $75,000 per year) in terms of "unjust enrichment" (fourth cause of action), "fraud" (fifth cause of action, and "conversion" (sixth cause of action).

With respect to the unjust enrichment claim, defendant argues again that plaintiff is precluded from pleading unjust enrichment because such claim is preempted by the INA, and that plaintiff has "…no private right of action." This fails for the same reason that the breach of contract claim failed; that merely because the terms of the bargain were recorded in the LCA, this does not mean that plaintiff is estopped from pleading unjust enrichment.

The same applies for the fraud claim, as it does for the conversion claim. Neither claim is prevented from going forward merely because the terms of the bargain were recorded in the LCA.

## Conclusion

The Labor Condition Application (henceforth the "LCA") is one of the most important parts of any H1B application. The purpose of the LCA is to assure Immigration and Customs enforcement that the labor conditions of the party being contemplated for the visa will be met, and that a particular salary will be paid. And aside from this, in order to induce plaintiff to contract exclusively with defendant, plaintiff was offered a yearly wage of $75,000, which figure was memorialized in the LCA and the application. However, after all agency fees, expenses and allowances, plaintiff received a check in the amount of $3,880.75. Leaving aside for a moment the $150,000 that was supposed to have been paid to the plaintiff for the period from January 2011 to January 2014, it is undisputed that during that time plaintiff did actually earn some $29, 639.60 for the agency. After agency commission was subtracted (a total of $5,659.00) and tax withheld ($6,790.80) a total of $17, 089.00 remained. Out of that, such deductions as "administrative fees" in the amount of $1000 (04/06/2011) – as well as all manner of others – were deducted, leaving plaintiff with about 1% of the money she had been promised by the modelling agency.

As such, it is submitted that sufficient matters of fact exist for trial.

Respectfully submitted,

*NG*

Narish M. Gehi

PLAINTIFF'S EXHIBIT A

OMB Approval: 1205-0310
Expiration Date: 01/31/2012



# Labor Condition Application for Nonimmigrant Workers
## ETA Form 9035 & 9035E
### U.S. Department of Labor

## F. Rate of Pay

| 1. Wage Rate (Required) | 2. Per: (Choose only one) * |
|---|---|
| From: $ 75000.00 * <br> To: $ N/A | ☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |

## G. Employment and Prevailing Wage Information

**Important Note:** It is important for the employer to define the place of intended employment with as much geographic specificity as possible. The place of employment address listed below <u>must be a physical location and cannot be a P.O. Box</u>. The employer may use this section to identify up to three (3) physical locations and corresponding prevailing wages covering each location where work will be performed and the electronic system will accept up to 3 physical locations and prevailing wage information. If the employer has received approval from the Department of Labor to submit this form non-electronically and the work is expected to be performed in more than one location, an attachment must be submitted in order to complete this section.

### a. Place of Employment 1

| 1. Address 1 * | 155 SPRING STREET |
|---|---|
| 2. Address 2 | FLOOR |
| 3. City * NEW YORK | 4. County * NEW YORK |
| 5. State/District/Territory * NEW YORK | 6. Postal code * 10012 |

### Prevailing Wage Information (corresponding to the place of employment location listed above)

| 7. Agency which issued prevailing wage § <br> N/A | 7a. Prevailing wage tracking number (if applicable) § <br> N/A |
|---|---|
| 8. Wage level * ☐ I ☐ II ☐ III ☑ IV ☐ N/A | |
| 9. Prevailing wage * $ 45490.00 | 10. Per: (Choose only one) * ☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |
| 11. Prevailing wage source (Choose only one) * ☑ OES ☐ CBA ☐ DBA ☐ SCA ☐ Other | |
| 11a. Year source published * <br> 2011 | 11b. If "OES", and SWA/NPC did not issue prevailing wage OR "Other" in question 11, specify source § <br> OFLC ONLINE DATA CENTER |

## H. Employer Labor Condition Statements

**! Important Note:** In order for your application to be processed, you <u>MUST</u> read Section H of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Employer Labor Condition Statements" and agree to all four (4) labor condition statements summarized below:

(1) **Wages:** Pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for non-productive time. Offer nonimmigrants benefits on the same basis as offered to U.S. workers.
(2) **Working Conditions:** Provide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly employed.
(3) **Strike, Lockout, or Work Stoppage:** There is no strike, lockout, or work stoppage in the named occupation at the place of employment.
(4) **Notice:** Notice to union or to workers has been or will be provided in the named occupation at the place of employment. A copy of this form will be provided to each nonimmigrant worker employed pursuant to the application.

| 1. **I have read and agree to** Labor Condition Statements 1, 2, 3, and 4 above and as fully explained in Section H of the Labor Condition Application – General Instructions – Form ETA 9035CP. * | ☑ Yes ☐ No |
|---|---|

PLAINTIFF'S EXHIBIT B

OMB No.1615-0009; Expires 10/31/2013

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# H-1B Data Collection and Filing Fee Exemption Supplement

| 1. Name of the petitioner | 2. Name of the beneficiary |
|---|---|
| Trump Model Management LLC | Alexia PALMER |

## Part A. General Information

**1. Employer Information** - *(check all items that apply)*

a. Is the petitioner an H-1B dependent employer?  ☒ No  ☐ Yes

b. Has the petitioner ever been found to be a willful violator?  ☒ No  ☐ Yes

c. Is the beneficiary an H-1B nonimmigrant exempt from the Dept. of Labor attestation requirements?  ☒ No  ☐ Yes

   1. If yes, is it because the beneficiary's annual rate of pay is equal to at least $60,000?  ☐ No  ☒ Yes

   2. Or is it because the beneficiary has a master's or higher degree in a specialty related to the employment?  ☒ No  ☐ Yes

d. Has the petitioner received TARP funding (provide explanation on **Page 7, Part 9** if the petitioner has subsequently repaid all TARP funding)?  ☒ No  ☐ Yes

e. Does the petitioner employ 50 or more individuals in the U.S.?  ☒ No  ☐ Yes

   If yes, are more than 50% of those employees in H-1B or L nonimmigrant status?  ☒ No  ☐ Yes

**2. Beneficiary's Highest Level of Education** (Check one box below)

☐ a. NO DIPLOMA
☒ b. HIGH SCHOOL GRADUATE DIPLOMA or the equivalent (example: GED)
☐ c. Some college credit, but less than 1 year
☐ d. One or more years of college, no degree
☐ e. Associate's degree *(for example: AA, AS)*
☐ f. Bachelor's degree *(for example: BA, AB, BS)*
☐ g. Master's degree *(for example: MA, MS, MEng, MEd, MSW, MBA)*
☐ h. Professional degree *(for example: MD, DDS, DVM, LLB, JD)*
☐ i. Doctorate degree *(for example: PhD, EdD)*

**3. Major/Primary Field of Study**

High School

| 4. Rate of Pay Per Year | 5. DOT Code | 6. NAICS Code |
|---|---|---|
| $75,000.00 | 2 9 7 | 7 1 1 4 1 0 |

## Part B. Fee Exemption Determination

In order for USCIS to determine if you must pay the additional $1,500 or $750 American Competitiveness and Workforce Improvement Act (ACWIA) fee, answer all of the following questions:

☒ No  ☐ Yes  1. Are you an institution of higher education as defined in section 101(a) of the Higher Education Act of 1965, 20 U.S.C. 1001(a)?

☒ No  ☐ Yes  2. Are you a nonprofit organization or entity related to or affiliated with an institution of higher education, as defined in section 101(a) of the Higher Education Act of 1965, 20 U.S.C. 1001(a)?

☒ No  ☐ Yes  3. Are you a nonprofit research organization or a governmental research organization, as defined in 8 CFR 214.2(h)(19)(iii)(C)?

☒ No  ☐ Yes  4. Is this the second or subsequent request for an extension of stay that this petitioner has filed for this alien?

☒ No  ☐ Yes  5. Is this an amended petition that does not contain any request for extensions of stay?

PLAINTIFF'S EXHIBIT C

April 12th 2011

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Vermont Service Center
30 Houghton Street
St. Albans, Vermont 05478

RE: PALMER, Alexia
H-1B Visa Petition

Dear Sir or Madam:

I am pleased to present this letter in support of the attached H-1B visa petition being filed on behalf of Ms. Alexia Palmer. Trump Model Management LLC a/k/a Trump Models wishes to utilize Ms. Palmer's professional services. We will employ her as a Fashion Model for a temporary period of three (3) years.

To this end, I take the liberty of detailing below the nature of our business activities, Ms. Palmer's extraordinary talent in the fashion modeling industry and the position offered.

**THE PETITIONER**

Established in 1999, Trump Model Management is one of New York City's top modeling agencies. With a name that symbolizes success, the agency has risen to the top of the fashion market, producing models that appear on the pages of magazines such as Vogue, on designer runways, in advertising campaigns and blockbuster movies. We take pride in scouting and developing our own talent in the stars of today and tomorrow, as well as maintaining outstanding client relations. With unsurpassed management and direction, our diverse group of managers and scouts continue to impress the world with their taste and style. Trump Model Management is an expression of exquisite beauty and contemporary style.

For over 10 years, Trump Model Management has been at the forefront of cultivating and nurturing a wide range of innovative and vibrant model talent. Priding itself in developing and managing some of the most noteworthy girls in the industry, Trump Models is also committed to creating a sense of family beyond the walls of the agency.

Corinne Nicolas, President of Trump Model Management, and her team are dedicated and ambitious in their pursuit of fulfilling the careers for each of their models. She has enlisted veteran Model Managers Jan Stewart, Sandra Sperka, Jolene

PLAINTIFF'S EXHIBIT D

Further, in accordance with paragraph (5) above, Ms. Palmer will command a salary of $75,000.00 per year, remuneration substantially higher than usually encountered in the field.

### POINT III

### THE LABOR CONDITION REQUIREMENT HAS BEEN MET

The required labor condition application has been filed with the U.S. Department of Labor and approved by the Certifying Officer.

### CONCLUSION

A review of the regulations and pertinent case law clearly establishes that Ms. Palmer merits classification as an H-1B alien.

Your review of the attached H-1B visa petition is respectfully solicited. We thank you for your attention to this matter.

Very truly yours,

WILDES & WEINBERG P.C.

Rafael A. Barreto

Encl.

PLAINTIFF'S EXHIBIT E

**TRUMP MODEL MANAGEMENT LLC**
155 SPRING STREET, 3RD FL. NEW YORK CITY 10012

ALEXIA PALMER
2234

05/16/2014
Page 1 / 3
Batch # 666

| DOC.# | DATE | LABEL | GROSS | COM | TX WITH | AMOUNT |
|---|---|---|---:|---:|---:|---:|
| 5594 | 01/22/2011 | CONDE NAST / EDITORIAL SHOOT | 270.00 | 54.00 | 64.80 | 151.20 |
| 7946 | 06/06/2012 | IMPALA, INC. IMAN COSMETICS / SHOOT DAY(S) 06/06 | 7,500.00 | 1,500.00 | 1,800.00 | 4,200.00 |
| 7946 | 06/06/2012 | IMPALA, INC. IMAN COSMETICS / SHOOT DAY(S) 06/07 | 7,500.00 | 1,500.00 | 1,800.00 | 4,200.00 |
| 8896 | 12/18/2012 | TRACY REESE / SHOOT DAY(S) | 800.00 | 160.00 | 192.00 | 448.00 |
| 9051 | 01/28/2013 | BLUEFLY / SHOOT DAY(S) | 1,000.00 | 200.00 | 240.00 | 560.00 |
| 9509 | 05/07/2013 | CARMEN MARC VALVO / FASHION SHOW | 300.00 | 60.00 | 72.00 | 168.00 |
| 9532 | 05/08/2013 | *CONDE NAST / SHOOT DAY(S) 05/06/13 | 250.00 | 50.00 | 60.00 | 140.00 |
| 9532 | 05/08/2013 | *CONDE NAST / FITTING DAY 04/18/13 | 175.00 | 35.00 | 42.00 | 98.00 |
| 9735 | 05/08/2013 | *METROPOLITAN MUSEUM OF ART / SHOOT DAY(S) 05/0 | 250.00 | 50.00 | 60.00 | 140.00 |
| 9731 | 05/08/2013 | C.M. CONDE NAST / SHOOT DAY(S) 05/08/13 | -250.00 | -50.00 | -60.00 | -140.00 |
| 9735 | 05/08/2013 | *METROPOLITAN MUSEUM OF ART / FITTING DAY 04/18/1 | 175.00 | 35.00 | 42.00 | 98.00 |
| 9731 | 05/08/2013 | C.M. CONDE NAST / FITTING DAY 04/18/13 | -175.00 | -35.00 | -42.00 | -98.00 |
| 9904 | 05/08/2013 | METROPOLITAN MUSEUM OF ART / SHOOT DAY(S) 05/08 | 250.00 | 50.00 | 60.00 | 140.00 |
| 9900 | 05/08/2013 | C.M. METROPOLITAN MUSEUM OF ART / SHOOT DAY(S) | -250.00 | -50.00 | -60.00 | -140.00 |
| 9904 | 05/08/2013 | METROPOLITAN MUSEUM OF ART / FITTING DAY 04/18/13 | 175.00 | 35.00 | 42.00 | 98.00 |
| 9900 | 05/08/2013 | C.M. METROPOLITAN MUSEUM OF ART / FITTING DAY 04/ | -175.00 | -35.00 | -42.00 | -98.00 |
| 10078 | 08/24/2013 | SAKS FIFTH AVENUE / SHOOT DAY(S) | 500.00 | 100.00 | 120.00 | 280.00 |
| 10078 | 08/24/2013 | SAKS FIFTH AVENUE / TRANSPORTATION ALLOWANCE | 80.00 | 0.00 | 0.00 | 80.00 |
| 10763 | 12/16/2013 | SMASHBOX COSMETICS / SHOOT DAY(S) | 10,000.00 | 2,000.00 | 2,400.00 | 5,600.00 |
| 10763 | 12/16/2013 | SMASHBOX COSMETICS / FLIGHT TICKET PAID BY MODE | 942.30 | 0.00 | 0.00 | 942.30 |
| 10813 | 12/16/2013 | SMASHBOX COSMETICS / HOTEL PAID BY MODEL | 222.30 | 0.00 | 0.00 | 222.30 |
| | | | 29,539.60 | 5,559.00 | 6,780.80 | 17,089.80 |
| 2011014 | 01/28/2011 | TEST - DOM SMITH | | | | -200.00 |
| 25125652 | 01/25/2011 | AT&T GO PHONE | | | | -54.44 |
| 12511 | 01/28/2011 | JOLENE - ALEXIA - SHOES | | | | -67.65 |
| 12511 | 01/28/2011 | JOLENE - ALEXIA AT&T CELL | | | | -32.64 |
| 1282011 | 01/28/2011 | CLOTHING - JOLENE CC | | | | -188.97 |
| 2030068 | 02/03/2011 | TED GIBSON SALON EXP. 02/03/11 | | | | -86.13 |
| 30155046 | 02/08/2011 | FUJI - DUANE READE-MAKEUP | | | | -25.84 |
| 39155046 | 02/08/2011 | FUJI - DUANE READE-MOISTERIZER | | | | -6.46 |
| 39155046 | 02/08/2011 | FUJI - FOREVER 21-CLOTHES | | | | -11.27 |
| 39155046 | 02/08/2011 | FUJI - RICKY'S - MAKE UP | | | | -27.90 |
| 155 | 02/08/2011 | TEST - MICHAEL DONOVAN | | | | -400.00 |

TRUMP MODEL MANAGEMENT LLC
155 SPRING STREET, 3RD FL. NEW YORK CITY 10012

CHECK NO.:

TRUMP MODEL MANAGEMENT LLC
CORPORATE ACCOUNT

ALEXIA SUZETT PALMER
5A ARONLD ROAD
KINGSTON 4
JAMAICA