UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ———————————————————— | ) | |
| ALEXIA PALMER, individually and on behalf of others similarly situated, | ) ) | Civil Action No. 14-cv-8307 (AT) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUMP MODEL MANAGEMENT, LLC, | ) | |
| CORRINE NICOLAS, individually, and | ) | |
| JANE OR JOHN DOE, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

**LAROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP**
The Trump Building
40 Wall Street, 32nd Floor
New York, New York 10005
*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………… **ii-iii**

PRELIMINARY STATEMENT…………………………………………… **1**

STATEMENT OF FACTS………………………………………………… **3**

ARGUMENT………………………………………………………… 4

I.    PLAINTIFF'S FIRST CAUSE OF ACTION UNDER THE FLSA
      MUST BE DISMISSED…………………………………………… 4

      A.    Plaintiff Was Not An Employee Under The FLSA……………………… 4

      B.    Plaintiff Has Failed To Allege A Minimum Wage
            Violation In Any Event………………………………………… 5

II.   PLAINTIFF'S SECOND CAUSE OF ACTION UNDER RICO
      MUST BE DISMISSED…………………………………………… 6

      A.    Plaintiff Cannot Circumvent The Lack Of A Private Right
            Of Action Under The INA……………………………………… 6

      B.    Plaintiff Cannot Recast A Garden Variety Breach Of Contract
            Claim As A Rico Claim………………………………………… 7

      C.    Plaintiff Has Otherwise Failed To Properly Plead A RICO Claim………… 8

III.  PLAINTIFF'S THIRD CAUSE OF ACTION FOR
      BREACH OF CONTRACT MUST BE DISMISSED………………………… 10

IV.   PLAINTIFF'S FOURTH CAUSE OF ACTION FOR UNJUST
      ENRICHMENT MUST BE DISMISSED……………………………… 12

V.    PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FRAUD MUST
      BE DISMISSED…………………………………………………… 12

VI.   PLAINTIFF'S SIXTH CAUSE OF ACTION FOR CONVERSION
      MUST BE DISMISSED…………………………………………… 13

CONCLUSION…………………………………………………………… 13

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

<u>AD Rendon Commun., Inc. v. Lumina Americas, Inc.</u>,
    2006 WL 1593884, at *2 (S.D.N.Y. June 7, 2006)………………………………… 13

<u>AM Cosmetics v. Solomon</u>, 67 F.Supp.2d 312, 320 (S.D.N.Y. 1999)…………………… fn.3

<u>Anatian v. Coutts Bank Ltd.</u>, 193 F.3d 85, 88 (2d Cir. 1999)…………………………… 9

<u>Ashlock v. Slone</u>, 2012 WL 3055775, at *8 (S.D.N.Y. July 26, 2012)…………………… 13

<u>Atlantis Info. Tech., GmbH v. CA, Inc.</u>, 485 F.Supp.2d 224 (E.D.N.Y. 2007)…………… fn.3

<u>Bojaj v. Moro Food Corp.</u>,
    2014 WL 6055771, *4 (S.D.N.Y. November 13, 2014)………………………… 4, 5

<u>Casci v. National Financial Network, LLC</u>,
    2015 WL 94229 (E.D.N.Y. January 7, 2015)…………………………………… 5

<u>Compagnia Importazioni v. L-3 Commun. Corp.</u>,
    703 F. Supp. 2d 296 (S.D.N.Y. 2010)………………………………………… 11

<u>Curtis & Associates, P.C.  v. Law Offices of David M. Bushman, Esq.</u>,
    758 F.Supp.2d 153 (E.D.N.Y. 2010)…………………………………………… 8

<u>Done v. HSBC Bank USA</u>, 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010)……… fn.1

<u>Ferro v. Metropolitan Center for Mental Health</u>,
    2014 WL 1265919 (S.D.N.Y. March 27, 2014)………………………………… 9, 10

<u>Goldfine v. Sichenzia</u>, 118 F.Supp.2d 392, 394 (S.D.N.Y. 2000)……………………… 8

<u>Gordon v. Kaleida Health</u>, 847 F.Supp.2d 479, 489 (W.D.N.Y. 2012)………………… passim

<u>Gross v. Waywell</u>, 628 F.Supp.2d 475, 483 (S.D.N.Y. 2009)………………………… 8

<u>Gupta v. Headstrong, Inc.</u>, 2013 WL 4710388 (S.D.N.Y. Aug. 20, 2013)…………… 6

<u>Helios International S.A.R.L., v. Cantamessa USA, Inc.</u>,
    2013 WL 3943267, *6 (S.D.N.Y. July 31, 2013)……………………………… 8

<u>Hinck v. United States</u>, 550 U.S. 501, 506 (2007)…………………………………… 7

<u>Hintergerger v. Catholic Health System</u>,
    2012 WL 125270 (W.D.N.Y. Jan. 17, 2012)………………………………… 7

<u>Howell v. I.N.S.</u>, 72 F.3d 288 (2nd Cir. 1995)………………………………………… 6

<u>Johnson v. Equinox Holdings, Inc.</u>,
  2014 WL 3058438 (S.D.N.Y. July 2, 2014)…………………………………………   5

<u>Lefkowitz v. Reissman</u>, 2014 WL 925410, *4 (S.D.N.Y. March 7, 2014)……………   8

<u>MacDraw, Inc. v. CIT Group Equip. Fin., Inc.</u>,
  157 F.3d 956, 964 (2d Cir. 1998)……………………………………………………   12

<u>Mack v. Parker Jewish Institute for Health Care and Rehabilitation</u>,
  2014 WL 5529746 at *1 (E.D.N.Y. Oct. 30, 2014)……………………………   9

<u>Ndiaye v. CVS Pharmacy 6081</u>, 547 F.Supp.2d 807 (S.D. Oh. 2009)………………   6

<u>Raske v. Next Management, LLC</u>,
  2013 WL 5033149 (Sup. Ct. N.Y. County September 12, 2013)………………   4, fn.3

<u>Rojas v. Don King Productions, Inc.</u>,
  2012 WL 760336 at *2 (S.D.N.Y. March 6, 2012)………………………………   11

<u>Sanchez v. Hoosac Bank</u>, 2014 WL 1326031 (S.D.N.Y. March 31, 2014)……………   8

<u>Shah v. Wilco</u>, 126 F.Supp.2d 641 (S.D.N.Y. 2000)……………………………………   10

<u>Spoto v. Herkimer County Trust</u>, 2000 WL 533293 (N.D.N.Y. April 27, 2000)…………   8

<u>Stanley v. Optuminsights, Inc.</u>, 2014 WL 906145 (N.D.N.Y. March 7, 2014)…………   9

<u>U.S. v. Richard Dattner Architects</u>, 972 F.Supp. 738 (S.D.N.Y. 1997)………………   6

<u>Venkatraman v. REI Systems, Inc.</u>, 417 F.3d 418 (4th Cir. 2004)………………………   6

<u>Wolff v. Rare Medium, Inc.</u>, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002)………………   10


***<u>Statutes:</u>***
29 U.S.C. § 216………………………………………………………………………   4

Federal Rule of Civil Procedure 9(b) ………………………………………………   9, 12

Federal Rule of Civil Procedure 9(c) ………………………………………………   11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ———————————————————— ) | |
| ALEXIA PALMER, individually and on behalf of ) | Civil Action No. 14-cv-8307 |
| others similarly situated, ) | (AT) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| TRUMP MODEL MANAGEMENT, LLC, ) | |
| CORRINE NICOLAS, individually, and ) | |
| JANE OR JOHN DOE, individually, ) | |
| ) | |
| Defendants. ) | |
| ———————————————————— ) | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

Defendants Trump Model Management, LLC ("TMM") and Corinne Nicolas (incorrectly

s/h/a Corrine Nicolas), by their attorneys, LaRocca Hornik Rosen Greenberg & Blaha LLP,

submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the

Federal Rules of the Civil Procedure, to dismiss each and every cause of action in plaintiff's

Second Amended Complaint.

**PRELIMINARY STATEMENT**

Distilled to its essence, this purported class action lawsuit is simply a garden variety

claim for breach of contract where the amount in dispute is approximately $12,000. The alleged

damages consist solely of personal expenses that TMM advanced on plaintiff's behalf in

furtherance of her career, for which TMM was contractually entitled to reimbursement out of the

modeling revenues generated by plaintiff during her very brief stint as a fashion model. Notably,

plaintiff--who admits to being in possession of a detailed accounting from TMM of all such

personal expenses-- nevertheless failed in her Second Amended Complaint to identify even one expense to which TMM was not entitled to be reimbursed.

By way of background, plaintiff, a Jamaican citizen, retained TMM in January 2011 to manage her modeling career and serve as her model management company in New York.  To memorialize this retention and the model-management relationship, the parties signed two different contracts: a management agreement (the "Management Agreement") and an expense agreement (the "Expense Agreement").  After the plaintiff signed both of these agreements, TMM engaged legal counsel on plaintiff's behalf to obtain an H-1B3 visa for her so that she could lawfully perform modeling work in the United States.

During the approximately three year period that TMM managed her modeling career, plaintiff was contracted to work on only a handful of modeling projects, which cumulatively totaled less than ten calendar days of work.

At the core of this putative class action lawsuit are two claims: (1) that TMM violated the wage provisions of Section 1182(n) of the Immigration and Nationality Act (the "INA") by not paying to plaintiff the same monetary amount that was set forth in the Labor Condition Application ("LCA"), which is a document that TMM's attorneys were required by INA rules to submit as part of plaintiff's H-1B3 visa application; and (2) that in contravention of the two signed agreements, TMM impermissibly reimbursed itself for personal expenses of the plaintiff that TMM advanced on her behalf.  From these two main allegations, plaintiff then asserts claims sounding in RICO, breach of contract, unjust enrichment, fraud, and conversion.

Plaintiff's INA-based claims fail as a matter of law because there is no private right of action afforded to her under this federal statute (Points II to VI below).  Her expense-based tort, quasi-contract, and RICO claims likewise fail as a matter of law because they impermissibly

recast her breach of contract claim (Points II, IV, V, and VI below). Her expense-based breach of contract claim fails because, among other things, she does not identify even a single personal expense that was advanced on her behalf by TMM for which TMM was not expressly authorized to be reimbursed as per the Management Agreement and Expense Agreements (Point III below).

Finally, plaintiff's alternatively pled minimum-wage violation claim under the Fair Labor Standards Act ("FLSA") also fails as a matter of law because plaintiff admittedly was never an employee of TMM; rather, she was a model who engaged TMM to manage her modeling career and to serve as her model management company. In any event, even if she were to be considered an "employee" of TMM for purposes of this motion, her total earnings for the approximately 10 days that she worked as a model far exceed the federal minimum wage under any mathematical analysis (Point I below).

## STATEMENT OF FACTS

Copies of plaintiff's Second Amended Complaint, defendants' Request for Admissions, plaintiff's Response to Requests for Admission, her Management Agreement, her Expense Agreement, and the written accounting provided to her by TMM are annexed to the moving declaration of Lawrence Rosen ("Rosen Decl."), as ***Exhibits A, B, C, D, E, and F***, respectively.[1]

---

[1] The Management Agreement, Expense Agreement, and the written accounting are all either incorporated by reference or integral to the Second Amended Complaint and are, therefore, properly considered on this motion to dismiss. *Rosen Decl., Exh. B* ¶ 12-14, *Exh. C* ¶ 12-14*; See Done v. HSBC Bank USA,* 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010).

**ARGUMENT**

**I.**

**PLAINTIFF'S FIRST CAUSE OF ACTION
UNDER THE FLSA MUST BE DISMISSED**

**A.    Plaintiff Was Not An Employee Under The FLSA**

In her first cause of action, plaintiff alleges that TMM failed to pay her the minimum wage under the FLSA.  Most fundamentally, this claim fails because plaintiff contractually engaged TMM to manage her modeling career and, as such, was never an employee of TMM. *See 29 U.S.C. § 216; Bojaj v. Moro Food Corp.,* 2014 WL 6055771, *4 (S.D.N.Y. November 13, 2014)* ("[o]nly employees may sue under the FLSA").  This fact is expressly admitted by plaintiff in the Management Agreement in which she acknowledged that she retained TMM to be her "***manager***" in New York and that she and TMM did not stand in any form of an employer/employee relationship.  *Rosen Decl., Exh. D, page 1.*

Importantly, under the express terms of the Management Agreement, plaintiff had no obligation to perform any services for TMM and also had no contractual obligation to even accept a modeling engagement that was presented to her through TMM.  *Rosen Decl., Exh. D, page 1.*    Likewise, TMM had no obligation under the agreement to procure modeling engagements or any other work for plaintiff.  *Id.*  Rather, TMM's material obligations under the Management Agreement were to negotiate the terms of any modeling engagements offered to plaintiff, and to perform administrative services on her behalf such as invoicing clients and collecting her modeling fees.  *Id.*  Simply put, this was nothing more than a standard arms-length business relationship between a model and her management company, and plaintiff fails to raise any substantive allegations in her Second Amended Complaint to suggest otherwise. *See e.g., Raske v. Next Management, LLC,* 2013 WL 5033149 (Sup. Ct. N.Y. County September 12,

2013).

**B.      Plaintiff Has Failed To Allege A Minimum Wage Violation In Any Event**

Even assuming for purposes of this motion that plaintiff was an employee of TMM, her FLSA claim still fails as a matter of law because, in her Second Amended Complaint, the plaintiff did not specifically set forth the number of hours that she worked as a purported "employee" of TMM, nor did she plead the amount of her actual gross earnings. *See e.g., Bojaj v. Moro Food Corp.,* 2014 WL 6055771 (plaintiff's FLSA minimum wage claim dismissed for failure to properly set forth plaintiff's alleged wages and number of hours actually worked); *Johnson v. Equinox Holdings, Inc.*, 2014 WL 3058438 (S.D.N.Y. July 2, 2014) (dismissing plaintiff's minimum wage claim under the FLSA where plaintiff failed to properly allege that "his effective hourly wage fell below the minimum wage"); *Casci v. National Financial Network,* LLC, 2015 WL 94229 (E.D.N.Y. January 7, 2015) (dismissing plaintiff's FLSA minimum wage claim where plaintiff failed to "allege facts about her salary and working hours, such that a simple arithmetical calculation [could] be used to determine the amount owed per pay period").

The reason for plaintiff's failure to properly allege these facts is simple: there is no mathematical calculation by which plaintiff could have earned less than the minimum wage given the extremely limited number of modeling projects on which she worked and the amount of her gross modeling fees for those projects. *Rosen Decl., Exh. B, ¶ 17-20, 25-28, Exh. C, ¶ 17-20, 25-28, and Exh. F.* In response to formal Requests for Admissions served by TMM, plaintiff admitted that she worked less than ten calendar days on a total of eight modeling projects during the approximate three year term of her business relationship with TMM. *Rosen Decl., Exh. B, ¶ 18-20, Exh., C ¶ 18-20, and Exh. F.* She also admitted that her gross earnings from these

projects were approximately $23,000. *Rosen Decl., Exh. B, ¶ 17-20, 25-28, Exh. C, ¶ 17-20, 25-28, and Exh. F.* So, even assuming plaintiff did not sleep or take any breaks at all, and worked 24 hours per day for those 10 days of work, her hourly earnings were still more than thirteen times the federal minimum wage of $7.25 per hour.[2]

## II.

### PLAINTIFF'S SECOND CAUSE OF ACTION
### UNDER RICO MUST BE DISMISSED

Plaintiff's second cause of action is nothing more than an attempt to recast her INA claims and her expense-based breach of contract claim as RICO violations. These claims fail for a plethora of reasons.

### A.    Plaintiff Cannot Circumvent The Lack Of A Private Right of Action Under the INA

First, with respect to the alleged INA violation, the well-established law in this Circuit is that there is no private right of action under the INA that permits the assertion of such a claim by the plaintiff here. *See Shah v. Wilco*, 126 F.Supp.2d 641 (S.D.N.Y. 2000); *See also Gupta v. Headstrong, Inc.*, 2013 WL 4710388 (S.D.N.Y. Aug. 20, 2013); *Howell v. I.N.S., 72 F.3d 288* (2nd Cir. 1995); *U.S. v. Richard Dattner Architects*, 972 F.Supp. 738 (S.D.N.Y. 1997); *Venkatraman v. REI Systems, Inc.*, 417 F.3d 418 (4th Cir. 2004); and *Ndiaye v. CVS Pharmacy 6081*, 547 F.Supp.2d 807 (S.D. Oh. 2009). Accordingly, plaintiff is barred from attempting to circumvent this lack of a private right of action by simply recasting her alleged INA claim as a purported RICO violation. *See Shah v. Wilco*, 126 F.Supp.2d 641.

Moreover, "[c]ourts in this circuit routinely have found federal RICO claims precluded

---

[2] Assuming plaintiff worked 24 hours per day for 10 days (i.e. 240 hours) her hourly wage was approximately $99.50 (i.e. $23,880.60 in gross earnings divided by 240 hours). Notably, even performing this calculation with plaintiff's net pay, she still earned approximately $16.16 per hour (i.e. $3,880.75 divided by 240 hours), which is well above the federal minimum wage. *Rosen Decl., Exh. B, ¶ 17-20, 25-28, Exh. C, ¶ 17-20, 25-28, and Exh. F.*

where the source of the asserted right is covered by a more detailed federal statute." *Gordon v. Kaleida Health*, 847 F.Supp.2d 479, 489 (W.D.N.Y. 2012). In *Gordon*, plaintiffs asserted claims under the FLSA and RICO both stemming from the same underlying allegation that defendants had failed to properly compensate them for overtime. The court dismissed the RICO claim and noted the "well-established principle that a precisely drawn, detailed statute preempts more general remedies." *Gordon v. Kaleida Health*, 847 F.Supp.2d at 489 (*internal quotations and citations omitted*), *citing*, *Hinck v. United States*, 550 U.S. 501, 506 (2007); *See also*, *Hintergerger v. Catholic Health System*, 2012 WL 125270 (W.D.N.Y. Jan. 17, 2012).

Here, the INA has a comprehensive and precise administrative scheme for dealing with the claims asserted by plaintiff. Plaintiff therefore is barred from circumventing this scheme by asserting a RICO claim (and other causes of action).

**B.    Plaintiff Cannot Recast A Garden Variety Breach Of Contract Claim As A RICO Claim**

Plaintiff's claim alleging that TMM wrongfully deducted from her earned modeling fees the personal expenses and cash advances it made on her behalf is expressly--and solely--governed by the terms of the Management Agreement and Expense Agreement. Specifically, both of these agreements expressly provide TMM with the right to deduct the cost of any personal expenses or cash advances that it advanced to plaintiff from her modeling fees as repayment. *See Rosen Decl., Exh. D, page 1* ("Manager shall have the right to deduct from all amounts paid or due to me...any and all fees, costs and expenses advanced or incurred by Manager on my behalf")*, and Exh. E* ("I have requested that [TMM], from time to time, make advances to me for my personal needs and to make payments on my behalf…[i]f I fail to make [repayments of these amounts], TMM may deduct the amount due to it from any fees or other compensation due to me that may be in TMM's possession").

Plaintiff is thus asserting nothing more than a simple breach of contract claim, which, as the Second Circuit courts have held, cannot be recast as a RICO violation.  *See Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 394 (S.D.N.Y. 2000) (a garden variety breach of contract claim cannot be "transformed into a vehicle for treble damages by resort[ing] to what…Judge All[e]n Schwartz [of the S.D.N.Y.] has referred to as 'the litigation equivalent of a thermonuclear device'- a civil RICO suit"); *Spoto v. Herkimer County Trust*, 2000 WL 533293 (N.D.N.Y. April 27, 2000); *Curtis & Associates, P.C.  v. Law Offices of David M. Bushman, Esq.,* 758 F.Supp.2d 153 (E.D.N.Y. 2010); *See also Helios International S.A.R.L., v. Cantamessa USA, Inc.*, 2013 WL 3943267, *6 (S.D.N.Y. July 31, 2013) (RICO claim dismissed where court found plaintiff's claims to be "nothing more than a commonplace business dispute involving what are, at essence, garden variety commercial claims such as breach of contract, breach of fiduciary duty and infringement of intellectual property rights") (*internal quotations omitted*); *Sanchez v. Hoosac Bank*, 2014 WL 1326031 (S.D.N.Y. March 31, 2014) (allegations of garden variety fraud or other common law offenses are insufficient to satisfy RICO pleading requirements); *Lefkowitz v. Reissman*, 2014 WL 925410, *4 (S.D.N.Y. March 7, 2014) ("[p]ermitting plaintiffs to advance RICO claims in such cases would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions") (*internal quotations omitted*); *Gross v. Waywell*, 628 F.Supp.2d 475, 483 (S.D.N.Y. 2009).

## C.    Plaintiff Has Otherwise Failed To Properly Plead A RICO Claim

Plaintiff has also failed to meet the required pleading elements for a RICO claim.  For one thing, she has failed to identify any distinct RICO "enterprise."  *See Gordon v. Kaleida Health*, 847 F.Supp.2d at 492 ("[i]t is well established in this Circuit that, under 1962(c), the

alleged RICO 'person' and RICO 'enterprise' must be distinct").  Rather, in her Second Amended Complaint, the only parties she identifies are TMM and Ms. Nicolas, who is the President of TMM.  This is insufficient as a matter of law to satisfy the enterprise requirement of a RICO claim. *Rosen Decl., Exh A; See Mack v. Parker Jewish Institute for Health Care and Rehabilitation*, 2014 WL 5529746 at *1 (E.D.N.Y. Oct. 30, 2014) ("[b]ecause a corporation may only function through the actions of its employees and agents, a corporation's employees, together with the corporation, do not form an enterprise distinct from the corporation itself") (*citations omitted*); *Ferro v. Metropolitan Center for Mental Health*, 2014 WL 1265919 (S.D.N.Y. March 27, 2014) ("by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)") (*citations and internal alterations omitted*).

Plaintiff has also failed to plead "mail fraud" with the requisite particularity.  *Rosen Decl., Exh. A; See Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999); *Federal Rule of Civil Procedure 9(b)*.  Specifically, she merely sets forth a conclusory assertion that "[d]efendants have engaged in a pattern…of mail fraud by filing H-1B applications." *Rosen Decl., Exh. A* ¶ 61.  In doing so, she not only fails to identify the time, speaker, contents of the alleged representations, and why the representations were purportedly fraudulent, but she also lumps the defendants together.   This type of pleading does not meet the particularity requirements for a RICO mail fraud claim. *See Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999); Gordon v. Kaleida Health*, 847 F.Supp.2d 489 (W.D.N.Y. 2012); *Stanley v. Optuminsights, Inc.*, 2014 WL 906145 (N.D.N.Y. March 7, 2014).

Finally, plaintiff has not (and cannot) demonstrate any proximate cause between the alleged "mail fraud" (i.e. which plaintiff asserts is TMM's mailing of the LCA) and her

purported loss of wage damages.  Fairly stated, the proximate cause of the LCA filing was to gain plaintiff entry to the United States so that she could perform modeling work here.  It does not necessarily follow that her presence in the United States caused any loss of wages.  *See Ferro v. Metropolitan Center for Mental Health*, 2014 WL 1265919, *5 (alleged fraudulent mailings of visa applications representing to INS that plaintiffs would be salaried employees was not the proximate cause of plaintiffs' alleged loss of wages and benefits).

### III.

### PLAINTIFF'S THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT MUST BE DISMISSED

In her third cause of action, plaintiff again attempts to recast the alleged INA violation by asserting that TMM "breached" its contract with her by not paying her the "salary" set forth in the LCA.  *Rosen Decl., Exh A.*  As set forth above, however, plaintiff has no private right of action under the INA and she cannot circumvent clearly established law simply by reclassifying her claim as one for breach of contract.  *See Shah v. Wilco Sys., Inc.*, *supra*.

Plaintiff also again makes the conclusory allegation that TMM violated the Management Agreement and Expense Agreement by improperly reimbursing itself for the personal expenses that it advanced on her behalf.  *Rosen Decl., Exh. A.*  In doing so, however, she does not identify which provisions of these agreements were purportedly breached, and she also does not identify even a single expense that she contends was improperly deducted from her gross modeling revenues.  *Rosen Decl., Exh. A; See Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue").  This is despite the fact that she admits to having received from TMM a detailed accounting of each and every expense that TMM deducted from her earned modeling fees. *Rosen Decl., Exh. B ¶ 12-14, 28,  Exh. C ¶ 12-14, 28, and Exh. F.*

Additionally, plaintiff failed to comply with the "notice and cure" provision under the parties' Management Agreement, which is a condition precedent to any breach of contract claim by her. *See Rojas v. Don King Productions, Inc.*, 11 CIV. 8468 KBF, 2012 WL 760336, at *2 (S.D.N.Y. Mar. 6, 2012) (under F.R.C.P. 9(c), a plaintiff is required to "allege generally that all conditions precedent have occurred or been performed"). Specifically, the Management Agreement requires that plaintiff provide TMM with written notice of the specific facts constituting its alleged breach and then allow TMM sixty days to cure any such breach. *Rosen Decl., Exh. D, page 2*. As plaintiff acknowledges (both by the omission of any allegation in her Second Amended Complaint that she complied with this provision and by her admissions in response to defendants' requests for admission), no such notice was ever given. *Rosen Decl., Exh. A, Exh. B, ¶ 6, and Exh. C ¶ 6.*

Finally, plaintiff alleges that TMM failed to "procure" employment opportunities for her. *Rosen Decl., Exh. A ¶ 73*. However, TMM had no such duty under the clear and express terms of the Management Agreement.[3]  *Rosen Decl., Exh. D; See Compagnia Importazioni v. L-3 Commun. Corp.,* 703 F. Supp. 2d 296 (S.D.N.Y. 2010).

---

[3] Plaintiff also makes reference to a "breach of fiduciary duty" in her third cause of action. *Rosen Decl., Exh. A, ¶* 72. However, it is well settled that a relationship between a model and her modeling agency is nothing more than a "conventional, arms-length business transaction that does not give rise to a fiduciary relationship." *See Raske v. Next Management, LLC* 40 Misc.3d 1240(A), 977 N.Y.S.2d 669 (Sup. Ct. NY County 2013). Further, even if there was an employment relationship (which there was not), an employer does not owe a fiduciary duty to its employees. *See AM Cosmetics v. Solomon*, 67 F.Supp.2d 312, 320 (S.D.N.Y. 1999) ("an employer-employee relationship is not fiduciary in nature"). In any event, any such breach of fiduciary duty claim would be duplicative of her breach of contract claim. *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F.Supp.2d 224 (E.D.N.Y. 2007).

**IV.**

**PLAINTIFF'S FOURTH CAUSE OF ACTION FOR
UNJUST ENRICHMENT MUST BE DISMISSED**

In her unjust enrichment cause of action, plaintiff again attempts to recast the alleged INA violation by asserting that TMM was "unjustly enriched" by not paying her the amount identified in the LCA. Again, plaintiff is barred from doing an end-run around her lack of a private right of action (and the comprehensive INA statutory scheme) by simply recasting an alleged INA violation as a common law claim for unjust enrichment. *See Shah v. Wilco Sys., Inc., supra.*

She further alleges that TMM was unjustly enriched by not paying her "just compensation" for her work on modeling engagements, which claim is precluded by the existence of her Management Agreement and Expense Agreement. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998) (the existence of a valid and enforceable written contract precludes recovery in quasi contract for events arising out of the same subject matter).

**V.**

**PLAINTIFF'S FIFTH CAUSE OF ACTION FOR
FRAUD MUST BE DISMISSED**

Plaintiff's fraud cause of action likewise attempts to recast the same purported INA violation set forth in her other causes of action and thus fails for the exact same reason, which is her lack of a private right of action. *See Shah v. Wilco Sys., Inc., supra.*

Additionally, she attempts to recast her expense-based claim (i.e. that TMM wrongfully deducted the personal expenses and cash advances that it advanced to her), which not only falls short of the particularity requirements of FRCP 9(b), but is also duplicative of her breach of

12

contract claim.  *See Ashlock v. Slone*, 2012 WL 3055775, at *8 (S.D.N.Y. July 26, 2012) ("to recover under fraud, the claim must arise from a legal duty that is separate and apart from the duty to perform under the contract").

## VI.

## PLAINTIFF'S SIXTH CAUSE OF ACTION FOR<br>CONVERSION MUST BE DISMISSED

Finally, plaintiff asserts a claim for conversion which is based on the same INA-based and expense-based allegations underlying most of her other causes of action.  The INA-based claim fails for the same reasons mentioned above, and her expense-based claim fails because it is duplicative of her breach of contract claim.  *See AD Rendon Commun., Inc. v. Lumina Americas, Inc.*, 2006 WL 1593884, at *2 (S.D.N.Y. June 7, 2006) ("[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable").

## CONCLUSION

Based on the foregoing, it is respectfully requested that (i) each and every cause of action in plaintiff's Second Amended Complaint be dismissed in its entirety and (ii) the Court grant defendants any and all such further relief as the Court may deem just and proper.

Dated: March 3, 2015
      New York, New York

<div style="margin-left:40%">

Respectfully submitted,
LAROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP

By: _____/s/_____

Lawrence S. Rosen (LR-8027)
Patrick McPartland (PM-4255)
40 Wall Street, 32nd Floor
New York, New York 10005
T:  212-530-4822, 4837
E: lrosen@lhrgb.com
   pmcpartland@lhrgb.com
*Attorneys for Defendants*

</div>

13

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 3, 2015, I caused to be served the foregoing Defendants' Motion to Dismiss via ECF upon the Court and on the following counsel for plaintiff via ECF and e-mail:

> Naresh M. Gehi, Esq.
> **GEHI & ASSOCIATES**
> 104-05 Liberty Avenue
> Ozone Park, NY 11417
> E: nmgehi@gmail.com

Katy Areas