UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

                                                    Index No. 14-CV-8307

ALEXIA PALMER, individually and on behalf of
others similarly situated,


                        Plaintiffs,


            -against-


TRUMP MODEL MANAGEMENT, LLC, et al.

                        Defendants.

------------------------------------------------------------X




**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**




                                    **GEHI & ASSOCIATES**
                                    104-05 Liberty Avenue
                                    Ozone Park, NY 11417
                                    *Counsel for Plaintiffs*

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES**……………………………………………   3

**PRELIMINARY STATEMENT**……………………………………...   4

**ARGUMENT**……………………………………………………...   6

    **I.**    **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION UNDER THE FLSA**……………………………………   6

        **A.**    **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFF WAS AN EMPLOYEE**………………   7

        **B.**    **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE *BOJAJ* IS INAPPLICABLE TO THE FACTS OF THIS CASE**……………………………………………...   9

    **II.**    **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION UNDER RICO**…………………………………………..   10

    **III.**    **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION FOR BREACH OF CONTRACT**………………………..   12

    **IV.**    **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION FOR UNJUST ENRICHMENT, FRAUD, AND CONVERSION**…………………………………………………   13

    **V.**    **CONCLUSION**……………………………………………...   15

## <u>TABLE OF AUTHORITIES</u>

Page

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)……………………………………………………………   13-14

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 555 (2007) …………………………………………………   14

*Bojaj v. Moro Food Corp.*
    2014 WL 655771, *4 (S.D.N.Y November 18, 2014) …………………………   7, 9

*Conley v. Gibson*
    355 U.S. 41 (1957) …………………………………………………………..   14

*Dajia Davenport v. Elite Model Management Corp.*
    case number 13-cv-01061, S.D.N.Y……………………………………………   7-8

*Gupta v. Headstrong, Inc.*
    2013 WL 4710388 (S.D.N.Y Aug. 20, 2013) ……………………………………   10

*H.J. Inc. v. Northwestern Bell Tel. Co.*
    492 U.S. 229, 239-40 (1989) ………………………………………………...   11

*Johnson v. Equinox Holdings, Inc.*
    2014 WL 3058438 (S.D.N.Y July 2, 2014) …………………………………   9

*Lefkowitz v. Reissman*
    2014 WL 925410 (S.D.N.Y March 7, 2014) …………………………………...   11

*NLRB v. United Ins. Co. of America*
    390 U.S. 254, 258 (1968) ………………………………………………………   8

*Shah v. Wilco*
    126 F. Supp. 2d 641 (S.D.N.Y November 20, 2000) ……………………………..   10, 13

*Wolff v. Rare Medium, Inc.*
    210 F. Supp. 2d 490, 494 (S.D.N.Y July 23, 2002) …………………………   12

18 U.S.C. § 1341……………………………………………………………………   11

18 U.S.C. § 1962……………………………………………………………………   11

29 U.S.C. § 216……………………………………………………………………..   7

NYLL § 653………………………………………………………………………...   7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

                                                    Index No. 14-CV-8307

ALEXIA PALMER, individually and on behalf of
others similarly situated,


                        Plaintiffs,


            -against-


TRUMP MODEL MANAGEMENT, LLC, et al.

                        Defendants.


-----------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

        Plaintiffs, ALEXIA PALMER, individually and on behalf of others similarly

situated, hereby submit this Memorandum of Law in Opposition to Defendants', Trump

Model Management, LLC and Corinne's, Motion to Dismiss, as Defendants' Motion

states no legal basis adequate for this Court to dismiss Plaintiff's Second Amended

Complaint, and the Motion must be denied in its entirety.

## PRELIMINARY STATEMENT

        Defendants' Motion to Dismiss opens with a preliminary statement that is

such a distortion of the facts of this case, containing conclusory statements, unsupported

allegations and what appear to be downright confabulations in such concentration and

volume that upon reading them the undersigned could hardly believe my opponents were

describing the Palmer matter.

Repeating the language of an earlier pleading, initially, the preliminary statement opens by stating grandly that "Distilled to its essence, this purported class action lawsuit is simply a garden variety claim for breach of contract where the amount in dispute is approximately $12,000." The preliminary statement goes on to characterize this complicated action as a picayune battle over "reimbursement out of the modelling revenues generated by Plaintiff during her very brief stint as a fashion model."

This is an egregious distortion of the facts of the case. In fact, this case comes from a course of conduct that the Defendants have engaged in for years and continue to engage in whereby Defendants entice foreign models to come to the United States by promising them things they in general never deliver, construct elaborate falsehoods that are then submitted upon penalty of perjury to the Department of Labor and are designed to ensure that H1B3 visas are issued, and do so with no intention of complying with the statements they have made to the federal government or with the promises they have made to young and impressionable models. What happened to Plaintiff Alexia Palmer is merely one example of the course of conduct that the Defendants have engaged in repeatedly, and her story serves to succinctly illustrate the lengths to which the Defendants are willing to go to ensure they have a fresh supply of models.

Defendants' Motion to Dismiss recounts two contacts that were signed between Plaintiff and Defendants: a Management Agreement and an Expenses Agreement. The preliminary statement would have the reader believe that the issue at bar is resolved by the fact that expenses that were deducted from Plaintiff's pay that she received as a model and nothing more. Contra **Exhibit A**. If this were true, then perhaps

this would be, as Defendants repeat, *ad nauseum*, a "garden variety breach of contracts" case. In fact, the case could be summed up thusly: the Defendants made an offer of employment to defendant, at that time resident in the country of Jamaica, under which Plaintiff would agree to model exclusively for the Defendants for a period of three years. In that period, according to the statements made to the Department of Labor in the form of the Labor Condition Application (hereinafter "LCA") and supporting correspondence, the Plaintiff and other members of the class, would be paid approximately $75,000 per annum. See **Exhibit B**; **Exhibit C**; **Exhibit D**. The purpose of the LCA is to provide the Federal government with all of the employment information it would need to make an informed decision about whether or not to grant the visa; it comprises all of the information about annual salary and job description the U.S. Department of Labor uses in its approval process. It is fair to say that the document is written to be believed; it is a sworn statement, made under oath.

Thus Plaintiff uprooted herself from her native country believing the promises that had been made to her and were written in the LCA – that Defendants would comply with their half of the bargain and provide the work that would comport with what was written in the LCA. Certainly, she was willing to do her part, and there is nowhere contained in any of the Defendants' pleadings the allegation that she refused work or failed to perform as she was expected to.

## **ARGUMENT**

I.   **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION UNDER THE FLSA**

## A. DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFF WAS AN EMPLOYEE

Defendants argue that the first cause of action,  failure by Defendants to pay minimum wage and other claims related to the FLSA, must be dismissed because of under the terms of the Fair Labor Standards Act, Plaintiff was not an employee, and therefore cannot avail herself of its protections. Initially, they cite the case of *Bojaj v. Moro Food Corp.*, 2014 WL 655771, *4 (S.D.N.Y November 18, 2014), which they argue should exclude Plaintiff from minimum-wage protection, based on the fact that she is not an "employee."

While it is true that *Bojaj* contains language that reads "Only employees may sue under the FLSA and NYLL. See 29 U.S.C. § 216; NYLL § 653, the very next line reads "Therefore,  if the plaintiffs do not allege that Five Amigos [the defendant] employed them, they lack standing to maintain a claim against Five Amigos." *Bojaj*, at 4. It turns out that the reason why *Bojaj* plaintiffs brought suit against Five Amigos was because " . . . Five Amigos belongs to [defendant] Zarate, who violates employees' rights. . . ." The *Bojaj* plaintiffs failed to allege that they were employed by defendant Zarate; there was no relationship between the *Bojaj* plaintiffs and the defendant whatsoever. Whereas, in the case at bar it is undisputed that Plaintiff Palmer and Defendants had a business and financial relationship. As such, the facts and circumstances of *Bojaj* differ to such an extent that the holding relied upon by Defendants should have no applicability.

It seems that the fashion industry is particularly wont to try to separate itself from granting "employee" status to the people who work for modeling companies, thus shielding them from the requirements of the FLSA. In the matter of *Dajia Davenport v.*

*Elite Model Management Corp.*, case number 13-cv-01061, S.D.N.Y, this Court approved a settlement, post class-certification, in which interns at Elite modeling, one of Trump's competitors, were found to be protected by the FLSA, and thus enjoyed the status, for the purpose of the statute, of "employee." Interns as a general rule trade off wages for an "in" to a profession, and yet in this case this Court agreed to extend the protections of the FLSA to them as part of the settlement.

With respect to Plaintiff Palmer, it is apparent that, in filling out the LCA in the fashion that it did, the plaintiffs wished to accept the responsibility of "employer." According to a website maintained by the Department of Labor entitled "H1B advisor" (http://webapps.dol.gov/elaws/h1b/glossary.aspx?word=all#E)    the    entry    entitled "Employed, employed by the employer, or employment relationship" means the employment relationship as determined under the common law, under which the key determinant is the putative employer's right to control the means and manner in which the work is performed. See **Exhibit E**. Under the common law, "no shorthand formula or magic phrase . . . can be applied to find the answer. . . . [A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258 (1968).  Since under the terms of her contract, Plaintiff Palmer could not model or indeed work elsewhere without breaching its terms, the "putative employer," Defendants Trump Model Management and Corinne indeed controlled the "means and manner in which work is performed." See **Exhibit F**.

Thus it is apparent that the terms as defined by the Department of Labor are meant to apply to the relationship enjoyed by the Plaintiff and the Defendants. Perhaps even more to the point is the very next entry in that glossary:  employer. The Department

of Labor defines Employer as " . . . . person, firm, corporation, contractor, or other association or organization in the United States which has an employment relationship with H-1B non-immigrants and/or U.S. worker(s). See **Exhibit E**. The person, firm, contractor, or other association or organization in the United States which files a petition on behalf of an H-1B nonimmigrant is deemed to be the employer of that H-1B nonimmigrant." *Id.*

It is hard to see how, given this definition, the department of Labor meant to exclude someone standing in the relationship defendant had with the Plaintiff from the definition of "employer."

## B. DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE *BOJAJ* IS INAPPLICABLE TO THE FACTS OF THIS CASE

Defendants again cite the wildly divergent facts of *Bojaj*, which are of such a radically different nature that it is inapplicable to the situation at bar. *Johnson v. Equinox Holdings, Inc.*, 2014 WL 3058438 (S.D.N.Y July 2, 2014) again deals with a radically different situation: personal trainers at a nationwide fitness company. And while the proposition advanced by the Defendants seems, at first blush, to militate in its favor – that a failure to plead hours and wages is fatal – in this case, the Plaintiff's alleged failure to specify the precise number of hours (difficult to quantify, inasmuch as unlike in the cases cited, there was no "clock-punching" or anything at all analogous) in fact points up another flaw in the entire relationship defendant had with Plaintiff. In *Bojaj* and *Johnson*, the plaintiffs were free to serve food (*Bojaj*) or train out of shape executives (*Johnson*) wherever they saw fit; their presence in the United States was in no wise dependent upon defendants' vouchsafing hours to work. Here, Plaintiff expected that she would be given sufficient hours to work; she was not.  Defendant writes "The reason for Plaintiff's

failure to properly allege these facts is simple: there is no mathematical calculation by which Plaintiff could have earned less than the minimum wage given the extremely limited number of modeling projects on which she worked and the amount of her gross fees for those projects." Defendants' Motion to Dismiss at 5.

In fact, a careful reading of the LCA reveals that the Defendants promised both the Department of Labor and Plaintiff a certain amount of work, and promised that she would be compensated fairly – graciously, in fact – for the work. See **Exhibit B**; **Exhibit C**; **Exhibit D**. Then, for reasons unstated, they failed to provide that much work; they failed, in fact, to provide work almost at all. No refusal of work by the Plaintiff is alluded to; they just stopped giving her the hours which would lend themselves to such calculation.

## II. DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION UNDER RICO

In arguing that Plaintiff's RICO claims must be dismissed, Defendants cite the *Shah* matter. See *Shah v. Wilco*, 126 F. Supp. 2d 641 (S.D.N.Y November 20, 2000); see also *Gupta v. Headstrong, Inc.* 2013 WL 4710388 (S.D.N.Y Aug. 20, 2013). While previously the Defendants argued that the Plaintiff was recasting her case as a "garden variety breach of contract case," here Defendants argue that Plaintiff is trying to circumvent the requirement that a right of action under the INA be public by recasting it, speciously, as a RICO violation. In support of the Defendants' proposition, the Defendants cite to case law that speaks generally to the fact that the INA has a "comprehensive and precise administrative scheme for dealing with the claims asserted by the Plaintiff." See Defendants' Memorandum of Law in Support of Motion to Dismiss

at 7. While Plaintiff intends to pursue those remedies as well, that does not preclude her from arguing that Defendants engaged in acts constituting "continuity plus relationship" as are required to establish a "pattern*," H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989), thus meeting the threshold for a civil RICO violation. Here, Defendants evinced a pattern of promising young models from foreign countries a life of glamour in Soho clubs and on catwalks. They then swore to those promises in LCAs. Upon information and belief, this was a course of conduct repeated ad infinitum; discovery will likely be most telling in this regard. See **Exhibit G**. As such, this is clearly a matter for a trier of fact; and cannot be disposed by Defendants' Motion to Dismiss.

Defendants cite case after case trying to cast what clearly is a course of conduct involving many foreign models as – once again – a "garden variety breach of contract case." See Defendants' Memorandum of Law in Support of Motion to Dismiss at 8. "Allegations of garden variety fraud or other common law offenses are insufficient to satisfy RICO pleading requirement." *Id.* (citing *Lefkowitz v. Reissman*, 2014 WL 925410 (S.D.N.Y March 7, 2014)). The discovery process will reveal that Defendants violated the Federal mail fraud statute, 18 U.S.C. § 1341, a predicate offense under RICO, on at least three separate occasions: (1) Defendants' mailing of a fraudulent LCA to the U.S. Department of Labor in Washington, DC; (2) Defendants' mailing of a fraudulent H-1B visa petition to the U.S. Citizenship and Immigration Services in Vermont; and (3) Defendants' mailing of a fraudulent B-2 visa petition to the U.S. Department of State's Consulate in Kingston, Jamaica.

Defendants claim the Plaintiff has failed to identify an 'enterprise' as is required under elements for a RICO claim; citing 18 U.S.C. § 1962, Defendants claim

that the claim must fail because defendant Nicholas is the president of defendant TMM. Defendants argue that since the named defendant is president of the corporate defendant, that insufficient legal distinction exists to support a RICO claim. This argument fails on its face; Defendants advance the proposition that a legal business cannot, by itself, engage in conduct violative of RICO statutes, a proposition not supported by any statute or case law.

Following that, the Defendants claim that the mailing of the LCA (the multifarious mailings to numerous models) has no nexus with the loss of wages that was occasioned by the conduct of the defendant. But without the LCA, there was no visa; without the visa there was no loss of wages. And without the U.S. Postal Service, none of this would have been possible.

### III. DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION FOR BREACH OF CONTRACT

In turning to Defendants' third section, Defendants go on to argue that they had no contractual obligations to the Plaintiff, despite agreeing in the LCA to provide Plaintiff with sustenance sufficient to prevent the Plaintiff (and thousands of similarly situated models) from becoming a public charge, swearing to the same in the LCA, writing all manner of effusive things about Plaintiff's ability to succeed in America as a model, indicated that Plaintiff would be paid some $75,000 per annum, and then bringing Plaintiff to the United States bound by a contract, potentially a contract of adhesion, that did not allow her to seek outside work. See **Exhibit B**; **Exhibit C**; **Exhibit D**. Defendants cite *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 essentially claiming that the spirit of a contract cannot be breached in the absence of express wording cited by

Plaintiff as the portion of the contract that was breached; Defendants argue that only an express provision of a contract can be breached. This flies in the face of centuries of western jurisprudence.

Defendants further argue that Plaintiff failed to comply with the "notice and cure" requirement in the contract; this is patently false, inasmuch as Plaintiff's dissatisfaction with the extremely limited work she was being vouchsafed by the Defendants, in breach of their promise both to Plaintiff and to the federal government to provide her with a sufficient amount of work so as not to become a public charge, was very well known to her employers. There was no formal complaint and resolution process at TMM, but Plaintiff complained constantly about the lack of work she was being accorded. Further, Plaintiff gave Defendants notice of her grievance by letter, to which Defendants received as evidenced by their response. See **Exhibit H**.

Defendants end that section of the Motion by alleging that there was no duty to "procure" employment under the terms of the contract. This is a gross misreading of the spirit of the contract, the understanding an H-1B sponsor enters into with the government, and advances the proposition that an H-1B sponsor owes its sponsoree and the people of the United States, by extension, no duty.

IV.    **DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION FOR UNJUST ENRICHMENT, FRAUD, AND CONVERSION**

Again citing *Shah*, supra, and arguing that Plaintiff's fraud, unjust enrich and conversion claims must be dismissed, Defendants advance a similar variety of the argument that has run through the Motion: that this is essentially a breach of contract suit and nothing more, and that any attempt to cast it as anything more fails. Yet all three of

these causes of action are viable, and a trial will reveal them to be.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the U.S. Supreme Court set down the standard for motions to dismiss; citing F.R.C.P. 8(a)(2), it held that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but the Court did find that Rule 8 requires the non-moving party to show plausible factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. In so doing, the Court confirmed that the standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), the Supreme Court case that had defined the Rule 8 pleading standard prior to *Bell Atlantic Corp. v. Twombly*, should not be followed in any context.

The Court restated the substance and application of the *Bell Atlantic Corp. v. Twombly* test for the sufficiency of pleadings:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. .  .  . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Our decision in *Twombly* illustrates the two-pronged approach.

Here, a plausible claim is made for relief, based on a plain reading of the facts. It is similarly apparent that Defendants have a long-standing practice of doing precisely what they did with Plaintiff herein. See **Exhibit G**. As such, the Defendants' Motion to Dismiss must itself be denied in its entirety, and the case must be allowed to proceed to a trier of fact.

## V.  <u>CONCLUSION</u>

In light of the foregoing, the Court must deny Defendants, Trump Model Management, LLC and Corinne Nicolas's, Motion to Dismiss in its entirety.

Dated: March 21, 2015
       Ozone Park, NY

<u>s/ Naresh Gehi</u>
Naresh M. Gehi, Esq.
Gehi & Associates
104-05 Liberty Avenue
Ozone Park, NY 11417
Ph: (718) 263-5999
Fax: (718) 263-1685
nmgehi@gmail.com

# Exhibit A

**TRUMP MODEL MANAGEMENT LLC**
155 SPRING STREET, 3RD FL. NEW YORK CITY 10012

**ALEXIA PALMER**
2234

05/16/2014
Page 1/3
Batch # 668

| DOC.# | DATE | LABEL | GROSS | COM | TX WITH | AMOUNT |
|---|---|---|---|---|---|---|
| 5594 | 01/22/2011 | CONDE NAST / EDITORIAL SHOOT | 270.00 | 54.00 | 64.80 | 151.20 |
| 7946 | 06/06/2012 | IMPALA, INC. IMAN COSMETICS / SHOOT DAY(S) 06/06 | 7,500.00 | 1,500.00 | 1,800.00 | 4,200.00 |
| 7946 | 06/06/2012 | IMPALA, INC. IMAN COSMETICS / SHOOT DAY(S) 06/07 | 7,500.00 | 1,500.00 | 1,800.00 | 4,200.00 |
| 8896 | 12/18/2012 | TRACY REESE / SHOOT DAY(S) | 800.00 | 160.00 | 192.00 | 448.00 |
| 9051 | 01/28/2013 | BLUEFLY / SHOOT DAY(S) | 1,000.00 | 200.00 | 240.00 | 560.00 |
| 9509 | 05/07/2013 | CARMEN MARC VALVO / FASHION SHOW | 300.00 | 60.00 | 72.00 | 168.00 |
| 9532 | 05/06/2013 | *CONDE NAST / SHOOT DAY(S) 05/06/13 | 250.00 | 50.00 | 60.00 | 140.00 |
| 9532 | 05/06/2013 | *CONDE NAST / FITTING DAY 04/18/13 | 175.00 | 35.00 | 42.00 | 98.00 |
| 9735 | 05/06/2013 | *METROPOLITAN MUSEUM OF ART / SHOOT DAY(S) 05/0 | 250.00 | 50.00 | 60.00 | 140.00 |
| 9731 | 05/06/2013 | C.M. CONDE NAST / SHOOT DAY(S) 05/06/13 | -250.00 | -50.00 | -60.00 | -140.00 |
| 9735 | 05/06/2013 | *METROPOLITAN MUSEUM OF ART / FITTING DAY 04/18/1 | 175.00 | 35.00 | 42.00 | 98.00 |
| 9731 | 05/06/2013 | C.M. CONDE NAST / FITTING DAY 04/18/13 | -175.00 | -35.00 | -42.00 | -98.00 |
| 9904 | 05/06/2013 | METROPOLITAN MUSEUM OF ART / SHOOT DAY(S) 05/06 | 250.00 | 50.00 | 60.00 | 140.00 |
| 9900 | 05/06/2013 | C.M. METROPOLITAN MUSEUM OF ART / SHOOT DAY(S) | -250.00 | -50.00 | -60.00 | -140.00 |
| 9904 | 05/06/2013 | METROPOLITAN MUSEUM OF ART / FITTING DAY 04/18/1: | 175.00 | 35.00 | 42.00 | 98.00 |
| 9900 | 05/06/2013 | C.M. METROPOLITAN MUSEUM OF ART / FITTING DAY 04/ | -175.00 | -35.00 | -42.00 | -98.00 |
| 10078 | 08/24/2013 | SAKS FIFTH AVENUE / SHOOT DAY(S) | 600.00 | 100.00 | 120.00 | 280.00 |
| 10078 | 08/24/2013 | SAKS FIFTH AVENUE / TRANSPORTATION ALLOWANCE | 80.00 | 0.00 | 0.00 | 80.00 |
| 10763 | 12/18/2013 | SMASHBOX COSMETICS / SHOOT DAY(S) | 10,000.00 | 2,000.00 | 2,400.00 | 5,600.00 |
| 10763 | 12/18/2013 | SMASHBOX COSMETICS / FLIGHT TICKET PAID BY MODE | 942.30 | 0.00 | 0.00 | 942.30 |
| 10813 | 12/18/2013 | SMASHBOX COSMETICS / HOTEL PAID BY MODEL | 222.30 | 0.00 | 0.00 | 222.30 |
| | | | 29,539.60 | 5,659.00 | 6,790.80 | 17,089.80 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2011014 | 01/28/2011 | TEST - DON SMITH | | | | -200.00 |
| 25125652 | 01/28/2011 | AT&T GO PHONE | | | | -54.44 |
| 12511 | 01/28/2011 | JOLENE - ALEXIA - SHOES | | | | -87.85 |
| 12511 | 01/28/2011 | JOLENE - ALEXIA AT&T CELL | | | | -32.64 |
| 1282011 | 01/28/2011 | CLOTHING - JOLENE CC | | | | -188.97 |
| 2030068 | 02/03/2011 | TED GIBSON SALON EXP. 02/03/11 | | | | -86.13 |
| 39155046 | 02/08/2011 | FUJI - DUANE READE-MAKEUP | | | | -25.54 |
| 39155046 | 02/08/2011 | FUJI - DUANE READE-MOISTERIZER | | | | -8.45 |
| 39155046 | 02/08/2011 | FUJI - FOREVER 21-CLOTHES | | | | -11.27 |
| 39155046 | 02/08/2011 | FUJI - RICKY'S - MAKE UP | | | | -27.90 |
| 155 | 02/08/2011 | TEST - MICHAEL DONOVAN | | | | -400.00 |

TRUMP MODEL MANAGEMENT LLC
155 SPRING STREET, 3RD FL. NEW YORK CITY 10012

CHECK NO.:

**ALEXIA SUZETT PALMER**
5A ARONLD ROAD
KINGSTON 4
JAMAICA

TRUMP MODEL MANAGEMENT LLC
CORPORATE ACCOUNT

# Exhibit B

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**



---

*Please read and review the filing instructions carefully before completing the ETA Form 9035 or 9035E. A copy of the instructions can be found at http://www.foreignlaborcert.doleta.gov/. In accordance with Federal Regulations at 20 CFR 655.730(b), incomplete or obviously inaccurate Labor Condition Applications (LCAs) will not be certified by the Department of Labor. If the employer has received permission from the Administrator of the Office of Foreign Labor Certification to submit this form non-electronically, ALL required fields/items containing an asterisk ( \* ) must be completed as well as any fields/items where a response is conditional as indicated by the section ( § ) symbol.*

---

## A. Employment-Based Nonimmigrant Visa Information

| 1. Indicate the type of visa classification supported by this application *(Write classification symbol)*: * | H-1B |
|---|---|

## B. Temporary Need Information

| 1. Job Title * | FASHION MODEL | | |
|---|---|---|---|
| 2. SOC (ONET/OES) code * <br> 41-9012.00 | | 3. SOC (ONET/OES) occupation title * <br> MODELS | |

| 4. Is this a full-time position? * | **Period of Intended Employment** | |
|---|---|---|
| ☑ Yes  ☐ No | 5. Begin Date * <br> *(mm/dd/yyyy)*  09/28/2011 | 6. End Date * <br> *(mm/dd/yyyy)*  09/28/2014 |

7. Worker positions needed/basis for the visa classification supported by this application

| 1 | **Total Worker Positions Being Requested for Certification *** |
|---|---|

Basis for the visa classification supported by this application
*(indicate the total workers in each applicable category based on the total workers identified above)*

| 1 | a. New employment * | 0 | d. New concurrent employment * |
|---|---|---|---|
| 0 | b. Continuation of previously approved employment * without change with the same employer | 0 | e. Change in employer * |
| 0 | c. Change in previously approved employment * | 0 | f. Amended petition * |

## C. Employer Information

| 1. Legal business name * | TRUMP MODEL MANAGEMENT LLC |
|---|---|

| 2. Trade name/Doing Business As (DBA), if applicable | N/A |
|---|---|

| 3. Address 1 * | 155 SPRING STREET |
|---|---|

| 4. Address 2 | FLOOR |
|---|---|

| 5. City * <br> NEW YORK | 6. State * <br> NY | 7. Postal code * <br> 10012 |
|---|---|---|

| 8. Country * <br> UNITED STATES OF AMERICA | 9. Province <br> N/A | |
|---|---|---|
| 10. Telephone number * <br> 2129247779 | 11. Extension <br> N/A | |

| 12. Federal Employer Identification Number (FEIN from IRS) * <br> 134040286 | 13. NAICS code (must be at least 4-digits) * <br> 711410 |
|---|---|

---

ETA Form 9035/9035E          **FOR DEPARTMENT OF LABOR USE ONLY**          Page 1 of 5

Case Number: ___I-200-11089-985972___   Case Status: ___CERTIFIED___   Period of Employment: ___09/28/2011___ to ___09/28/2014___

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**



---

### D.  Employer Point of Contact Information

<u>**Important Note**</u>: The information contained in this Section must be that of an employee of the employer who is authorized to act on behalf of the employer in labor certification matters.  The information in this Section <u>must be different</u> from the agent or attorney information listed in Section E, unless the attorney is an employee of the employer.

| 1.  Contact's last (family) name *<br>NICOLAS | 2.  First (given) name *<br>CORINNE | 3.  Middle name(s) *<br>N/A |
|---|---|---|
| 4.  Contact's job title *   PRESIDENT | | |
| 5.  Address 1 *   155 SPRING STREET | | |
| 6.  Address 2       FLOOR | | |
| 7.  City *  NEW YORK | 8.  State *  NY | 9.  Postal code *  10012 |
| 10.  Country *<br>UNITED STATES OF AMERICA | 11.  Province<br>N/A | |
| 12.  Telephone number *<br>2129247779 | 13.  Extension<br>N/A | 14.  E-Mail address<br>CORINNE@TRUMPMODELS.COM |

---

### E.  Attorney or Agent Information (If applicable)

| 1.  Is the employer represented by an attorney or agent in the filing of this application? *<br>    If "Yes", complete the remainder of Section E below. | ☑ Yes      ☐ No |
|---|---|

| 2.  Attorney or Agent's last (family) name §<br>WILDES | 3.  First (given) name §<br>MICHAEL | 4.  Middle name(s) §<br>JAY |
|---|---|---|
| 5.  Address 1 §   515 MADISON AVENUE | | |
| 6.  Address 2     6TH FLOOR | | |
| 7.  City §<br>NEW YORK | 8.  State §<br>NY | 9.  Postal code §<br>10022 |
| 10.  Country §<br>UNITED STATES OF AMERICA | 11.  Province<br>N/A | |
| 12.  Telephone number §<br>2127533468 | 13.  Extension<br>N/A | 14.  E-Mail address<br>RBARRETO@WILDESWEINBERG.COM |

| 15.  Law firm/Business name §<br>WILDES & WEINBERG P.C. | 16.  Law firm/Business FEIN §<br>133946882 |
|---|---|
| 17.  State Bar number (only if attorney) §<br><br>2382091 | 18.  State of highest court where attorney is in good standing (only if attorney) §<br>NEW YORK |
| 19.  Name of the highest court where attorney is in good standing (only if attorney) §<br><br>COURT OF APPEALS | |

---

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

**Labor Condition Application for Nonimmigrant Workers**
**ETA Form 9035 & 9035E**
**U.S. Department of Labor**



---

### F. Rate of Pay

| 1. Wage Rate (Required) | 2. Per: (Choose only one) * |
|---|---|
| From: $ 75000.00 * | ☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |
| To: $ N/A | |

### G. Employment and Prevailing Wage Information

**Important Note:** It is important for the employer to define the place of intended employment with as much geographic specificity as possible. The place of employment address listed below must be a physical location and cannot be a P.O. Box. The employer may use this section to identify up to three (3) physical locations and corresponding prevailing wages covering each location where work will be performed and the electronic system will accept up to 3 physical locations and prevailing wage information. If the employer has received approval from the Department of Labor to submit this form non-electronically and the work is expected to be performed in more than one location, an attachment must be submitted in order to complete this section.

#### a. Place of Employment 1

| 1. Address 1 * |
|---|
| 155 SPRING STREET |

| 2. Address 2 |
|---|
| FLOOR |

| 3. City * | 4. County * |
|---|---|
| NEW YORK | NEW YORK |

| 5. State/District/Territory * | 6. Postal code * |
|---|---|
| NEW YORK | 10012 |

*Prevailing Wage Information (corresponding to the place of employment location listed above)*

| 7. Agency which issued prevailing wage § | 7a. Prevailing wage tracking number (if applicable) § |
|---|---|
| N/A | N/A |

| 8. Wage level * |
|---|
| ☐ I ☐ II ☐ III ☑ IV ☐ N/A |

| 9. Prevailing wage * | 10. Per: (Choose only one) * |
|---|---|
| $ 45490.00 | ☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |

| 11. Prevailing wage source (Choose only one) * |
|---|
| ☑ OES ☐ CBA ☐ DBA ☐ SCA ☐ Other |

| 11a. Year source published * | 11b. If "OES", and SWA/NPC did not issue prevailing wage OR "Other" in question 11, specify source § |
|---|---|
| 2011 | OFLC ONLINE DATA CENTER |

### H. Employer Labor Condition Statements

❗ *Important Note:* In order for your application to be processed, you MUST read Section H of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Employer Labor Condition Statements" and agree to all four (4) labor condition statements summarized below:

(1) **Wages:** Pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for non-productive time. Offer nonimmigrants benefits on the same basis as offered to U.S. workers.

(2) **Working Conditions:** Provide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly employed.

(3) **Strike, Lockout, or Work Stoppage:** There is no strike, lockout, or work stoppage in the named occupation at the place of employment.

(4) **Notice:** Notice to union or to workers has been or will be provided in the named occupation at the place of employment. A copy of this form will be provided to each nonimmigrant worker employed pursuant to the application.

| 1. I have read and agree to Labor Condition Statements 1, 2, 3, and 4 above and as fully explained in Section H of the Labor Condition Application – General Instructions – Form ETA 9035CP. * | ☑ Yes ☐ No |
|---|---|

---

| ETA Form 9035/9035E | FOR DEPARTMENT OF LABOR USE ONLY | Page 3 of 5 |
|---|---|---|
| Case Number: I-200-11089-985972 | Case Status: CERTIFIED   Period of Employment: 09/28/2011 to 09/28/2014 | |

OMB Approval: 1205-0310
Expiration Date 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**



---

**I. Additional Employer Labor Condition Statements – H-1B Employers ONLY**

*!* <u>Important Note</u>: In order for your H-1B application to be processed, you **MUST** read Section I – Subsection 1 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and answer the questions below.

**a. Subsection 1**

| | | |
|---|---|---|
| 1. Is the employer H-1B dependent? § | | ❑ Yes  ☑ No |
| 2. Is the employer a willful violator? § | | ❑ Yes  ☑ No |
| 3. If "Yes" is marked in questions I.1 and/or I.2, you must answer "Yes" or "No" regarding whether the employer will use this application <u>ONLY</u> to support H-1B petitions or extensions of status for exempt H-1B nonimmigrants? § | | ❑ Yes  ❑ No  ☑ N/A |

If you marked "Yes" to questions I.1 and/or I.2 and "No" to question I.3, you **MUST** read Section I – Subsection 2 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and indicate your agreement to all three (3) additional statements summarized below.

**b. Subsection 2**

    A.  **Displacement:** Non-displacement of the U.S. workers in the employer's workforce
    B.  **Secondary Displacement:** Non-displacement of U.S. workers in another employer's workforce; and
    C.  **Recruitment and Hiring:** Recruitment of U.S. workers and hiring of U.S. workers applicant(s) who are equally or better qualified than the H-1B nonimmigrant(s).

| | |
|---|---|
| 4. <u>I have read and agree</u> to Additional Employer Labor Condition Statements A, B, and C above and as fully explained in Section I – Subsections 1 and 2 of the Labor Condition Application – General Instructions Form ETA 9035CP. § | ❑ Yes  ❑ No |

---

**J. Public Disclosure Information**

*!* <u>Important Note</u>: You <u>must</u> select from the options listed in this Section.

| | |
|---|---|
| 1.  Public disclosure information will be kept at: * | ☑ Employer's principal place of business<br>❑ Place of employment |

---

**K. Declaration of Employer**

*By signing this form, I, on behalf of the employer, attest that the information and labor condition statements provided are true and accurate; that I have read sections H and I of the Labor Condition Application – General Instructions Form ETA 9035CP, and that I agree to comply with the Labor Condition Statements as set forth in the Labor Condition Application – General Instructions Form ETA 9035CP and with the Department of Labor regulations (20 CFR part 655, Subparts H and I). I agree to make this application, supporting documentation, and other records available to officials of the Department of Labor upon request during any investigation under the Immigration and Nationality Act. Making fraudulent representations on this Form can lead to civil or criminal action under 18 U.S.C. 1001, 18 U.S.C. 1546, or other provisions of law.*

| 1.  Last (family) name of hiring or designated official * | 2.  First (given) name of hiring or designated official * | 3.  Middle initial * |
|---|---|---|
| NICOLAS | CORINNE | N/A |

| 4.  Hiring or designated official title * |
|---|
| PRESIDENT |

| 5.  Signature * | 6.  Date signed * |
|---|---|
| *(signature)* | 4-12-11 |

---

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
U.S. Department of Labor



## L. LCA Preparer

**Important Note**: Complete this section if the preparer of this LCA is a person other than the one identified in either Section D (employer point of contact) or E (attorney or agent) of this application.

| 1. Last (family) name § BARRETO | 2. First (given) name § RAFAEL | 3. Middle initial § A |
|---|---|---|
| 4. Firm/Business name § WILDES & WEINBERG P.C. | | |
| 5. E-Mail address §  RBARRETO@WILDESWEINBERG.COM | | |

## M. U.S. Government Agency Use (ONLY)

By virtue of the signature below, the Department of Labor hereby acknowledges the following:

This certification is valid from ____09/28/2011____ to ____09/28/2014____.

*William L. Carlson*
Department of Labor, Office of Foreign Labor Certification

04/05/2011
Determination Date (date signed)

I-200-11089-985972
Case number

CERTIFIED
Case Status

*The Department of Labor is not the guarantor of the accuracy, truthfulness, or adequacy of a certified LCA.*

## N. Signature Notification and Complaints

The signatures and dates signed on this form will not be filled out when electronically submitting to the Department of Labor for processing, but **MUST** be complete when submitting non-electronically.  If the application is submitted electronically, any resulting certification **MUST** be signed *immediately upon receipt* from the Department of Labor  before it can be submitted to USCIS for further processing.

Complaints alleging misrepresentation of material facts in the LCA and/or failure to comply with the terms of the LCA may be filed using the WH-4 Form with any office of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor.  A listing of the Wage and Hour Division offices can be obtained at http://www.dol.gov/esa.  Complaints alleging failure to offer employment to an equally or better qualified U.S. worker, or an employer's misrepresentation regarding such offer(s) of employment, may be filed with the U.S. Department of Justice, Office of the Special Counsel for Immigration-Related Unfair Employment Practices, 950 Pennsylvania Avenue, NW, Washington, DC, 20530.  Please note that complaints should be filed with the Office of Special Counsel at the Department of Justice only if the violation is by an employer who is H-1B dependent or a willful violator as defined in 20 CFR 655.710(b) and 655.734(a)(1)(ii).

## O. OMB Paperwork Reduction Act *(1205-0310)*

These reporting instructions have been approved under the Paperwork Reduction Act of 1995.  Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. Obligations to reply are mandatory (Immigration and Nationality Act, Section 212(n) and (t) and 214(c).  Public reporting burden for this collection of information, which is to assist with program management and to meet Congressional and statutory requirements is estimated to average 1 hour per response, including the time to review instructions, search existing data sources, gather and maintain the data needed, and complete and review the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Room C-4312, 200 Constitution Ave. NW, Washington, DC 20210.  (Paperwork Reduction Project OMB 1205-0310.) **Do NOT send the completed application to this address.**

# Exhibit C

**April 12th 2011**

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Vermont Service Center
30 Houghton Street
St. Albans, Vermont 05478

RE:   PALMER, Alexia
H-1B Visa Petition

Dear Sir or Madam:

I am pleased to present this letter in support of the attached H-1B visa petition being filed on behalf of Ms. Alexia Palmer. Trump Model Management LLC a/k/a Trump Models wishes to utilize Ms. Palmer's professional services. We will employ her as a Fashion Model for a temporary period of three (3) years.

To this end, I take the liberty of detailing below the nature of our business activities, Ms. Palmer's extraordinary talent in the fashion modeling industry and the position offered.

**THE PETITIONER**

Established in 1999, Trump Model Management is one of New York City's top modeling agencies. With a name that symbolizes success, the agency has risen to the top of the fashion market, producing models that appear on the pages of magazines such as Vogue, on designer runways, in advertising campaigns and blockbuster movies. We take pride in scouting and developing our own talent in the stars of today and tomorrow, as well as maintaining outstanding client relations. With unsurpassed management and direction, our diverse group of managers and scouts continue to impress the world with their taste and style. Trump Model Management is an expression of exquisite beauty and contemporary style.

For over 10 years, Trump Model Management has been at the forefront of cultivating and nurturing a wide range of innovative and vibrant model talent. Priding itself in developing and managing some of the most noteworthy girls in the industry, Trump Models is also committed to creating a sense of family beyond the walls of the agency.

Corinne Nicolas, President of Trump Model Management, and her team are dedicated and ambitious in their pursuit of fulfilling the careers for each of their models. She has enlisted veteran Model Managers Jan Stewart, Sandra Sperka, Jolene

2

Rapport, JD Cohen, Fuji Ruiz and Lisa Forsberg, for this accomplishment.  As well, she put together a dynamic team for the new faces "Development" division.  Spearheaded by Director of Scouting and Development, Duane Gazi, this division is the core of what Trump Models believes is the future of not only their own endeavors, but the industry as a whole.  With the help of established creative force Andrew Majca, the needs, fears, and wants of new faces are propelled full steam ahead into mounting each girl's full potential.

Trump Model Management was the brainstorm and vision of owner Donald Trump, and has catapulted into one of the leading agencies in New York.  The agency has achieved status recognition with the top magazines, designers, photographers and clients from around the world and has prevailed in acquiring some of the most coveted cosmetic and fashion contracts in the industry.  Since the opening of the agency, its philosophy has been one of small, intimate, one-on-one management. With its smart and savvy team, Trump Model Management is ahead of the game and knows exactly what is needed in today's evolving market.

## THE POSITION OF FASHION MODEL

A model of Ms. Palmer's caliber and qualifications is extremely valuable to our reputation in the field and our ability to attract new clients.  Ms. Palmer's distinguished merit and ability in this area are prerequisites to the high level modeling positions in which her services will be utilized.

In this respect, Trump Model Management now wishes to manage Ms. Palmer's talents for a series of events.  She will be required to perform the following duties:

1. Show up to castings and jobs at the assigned times.

2. Communicate with her manager on a daily basis to check her casting/job schedule.

3. All unavailable dates must be communicated to a manager at Trump Model Management in a timely manner.

4. She must do her best to stay in the best possible shape through regular exercise and proper diet to present the best possible look to the clients.

5. Assemble and maintain portfolios, print composite cards, and travel to go-sees to obtain jobs.

3

6. Work closely with photographers, fashion coordinators, directors, producers, stylists, make-up artists, other models, and clients to produce the desired looks, and to finish photo shoots on schedule.

7. Apply makeup to face and style hair to enhance appearance, considering such factors as color, camera techniques, and facial features.

8. Display clothing and merchandise in commercials, advertisements, and/or fashion shows.

9. Promote products and services in television commercials, on film, or in videos.

10. All model placements in different markets must be done by Trump Model Management to all models that we are "Mother Agent" to.

11. Collect the signed vouchers at each job and return the vouchers to the agency in a timely manner.

We expect Ms. Palmer to work with several of our clients and publications such as J. Crew, Allure magazine, Neiman Marcus, Elle magazine, Urban NYC, Catherine Malandrino Show, Diane von Fostenburg Show, Bloomingdales, Teen Vogue Magazine, Avon, Godlove & Co. Casting, Donna Deseta Casting, Macys/Advertex, Trew Productions, MTC Casting, and others of similar high fashion quality.

Ms. Palmer's itinerary will include scheduled and anticipated appearances in international, national and local publications, magazines and periodicals.  This will include modeling for advertisements and appearances in prestigious publications, as well as appearances on television commercials to be carried on major broadcast and cable television stations and casting for films, soap operas and music videos.

Moreover, Ms. Palmer will appear in major fashion shows for distinguished designers, and will be modeling the latest and hottest creations of the designers' garments, swimwear and outerwear, and her participation will be critical for the success of these fashion shows.

Ms. Palmer will receive compensation of at least $75,000.00 per year for the services delineated above, which represent just a sampling of her scheduled and anticipated appearances over the next three years.  Between these events, Ms. Palmer will be involved in promotional activities as well.  Such activities will constitute periods of continue engagements during the time period requested in the attached petition.  She is

4

a model whose services have been in great demand, and whose proposed temporary presence in the United States has stirred great anticipation by Trump Model Management and its clientele.

## ALEXIA PALMER'S QUALIFICATIONS

Ms. Palmer is an exceptional lovely young woman who has worked extensively as a model throughout Jamaica.  She was discovered through the Caribbean Model Search by Pulse Model Management, one of the most important agencies in Jamaica. Ms. Palmer is considered one of the top models in the Caribbean and Jamaica.

Throughout Ms. Palmer's career, she has appeared in Fashion editorials spreads for Jamaica Gleaner (the largest and most established newspaper in Jamaica), and in  fashion and beauty editorials for the Jamaica Observer (one of Jamaica's largest national newspaper publication).   Further, Ms. Palmer has appeared in the cover of the Jamaica Observer; fashion editorials for several photographers in Jamaica; fashion editorials for some of Jamaica's leading designers, including Drenna Luna, Julan and Lubica among others.  She also has been featured in the Mini Cooper  New Countryman Auto Launch fashion show, celebrated in Kingston Jamaica and at several 'Fashion Fix' extravaganzas, at 'Studio 38', Kingston Jamaica.

Ms. Palmer has modeled for some of the best fashion photographers in Jamaica such as Marc Evans, Luca Khouri, Marvin Bartley and Gladstone Taylor. Indeed, she has been featured in the editorial pages of the Jamaica Gleaner, Jamaica Observer, flair magazine and the Observer Fashion − Under the Dryer. Such accomplishments place   Ms. Palmer as a distinguished fashion model in Jamaica.

The attached documentation clearly illustrates that Ms. Palmer is a Fashion Model of the highest caliber.  There can be no doubt that her International renown will guarantee our fashion agency to maintain its reputation as one of the best in the field.

We strongly believe Ms. Palmer meets the high standards of Trump Model Management as a Fashion Model of distinguished merit and ability.  In view of the

5

above, and our urgent need for Ms. Palmer's temporary services in the United States, we respectfully solicit your kind attention to the H-1B visa petition filed on her behalf.

Very truly yours,

Trump Model Management d/b/a
Trump Models

Corinne Nicolas
President

33

# Exhibit D

LAW OFFICES

**WILDES & WEINBERG P.C.**

*515 Madison Avenue*

*New York, New York 10022*

(212) 753-3468

Fax (212) 753-3866

LEON WILDES
STEVEN L. WEINBERG
MICHAEL J. WILDES*
ROXANNE H. LEVINE
——
AMY M. WILDES**
RAFAEL A. BARRETO
TRACEY E. NEHMAD**
MIN-HUI YE
THOMAS W. VANASSE***
CHRISTOPHER W. BASAMAN****
STACEY A. SIMON**
SHERZOD R. TUYCHIBAEV
MARIJAN CVJETICANIN
ANDREW G. DROZDOWSKI****

* ALSO ADMITTED TO PRACTICE IN NJ & DC
** ALSO ADMITTED TO PRACTICE IN NJ
*** ALSO ADMITTED TO PRACTICE IN CT
**** ONLY ADMITTED TO PRACTICE IN NJ

NEW JERSEY OFFICES
☐ *If checked please reply to:*

90 WEST PALISADE AVENUE
ENGLEWOOD, NJ 07631
(201) 569-7891
FAX (201) 569-7838
——
E-MAIL
INFO@WILDESWEINBERG.COM

April 15, 2011

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Vermont Service Center
30 Houghton Street
St. Albans, Vermont 05478

> Re:   Petitioner: Trump Model Management LLC
> Beneficiary:  PALMER, Alexia
> H-1B3 Visa Petition

Dear Sir or Madam:

Please be advised that we represent Trump Model Management LLC in its petition for H-1B3 status on behalf of Ms. Alexia Palmer, in support of which we attach the following:

1. Form I-907 Premium Processing Request and Form I-129 with H Classification Supplement, in duplicate.
2. Form G-28, evidencing our representation of petitioner.
3. Statement of petitioner, in duplicate.
4. Documentation regarding Trump Model Management LLC, evidencing the firm's prominence within the field of fashion modeling.
5. Documentation regarding the beneficiary's prominence as a fashion model.
6. Labor Condition Application, duly certified by the U.S. Department of Labor.
7. Copies of Ms. Palmer's proposed itinerary of events.
8. Checks in the **amount of $325.00, $750.00, $500.00 & $1,225.00** representing filing, H-1B surcharge, fraud and premium processing fees.

As indicated by the attached documentation, the petitioner, a modeling organization representing top models, seeks the temporary services of a uniquely qualified individual for a temporary period of three years, as a Fashion Model.

WWW.WILDESWEINBERG.COM

25

2

H-1B classification is accorded to "an alien who is coming temporarily to the United States to perform services...to perform services as a fashion model of distinguished merit and ability and for whom the Secretary of Labor has determined and certified to the Attorney General that the prospective employer has filed a labor condition application under section 212(n)(1) of the Act. Section 101(a)(15)(H))(I)(B) of the Immigration and Nationality Act, as amended by the Immigration Act of 1990. Ms. Palmer merits H-1B classification. She will be performing services as a fashion model and fully meets the requirements of said occupation.

POINT I

THE PETITIONER MEET THE CRITERIA FOR A POSITION
REQUIRING A FASHION MODEL OF PROMINENCE

8 C.F.R. §214.2(h)(4)(vii)(B) Palmer as follows:

(B) Petitioner's requirements. To establish that a position requires prominence, the petitioner must establish that the position meets one of the following criteria:

> (1) The services to be performed involve events or productions which have a distinguished reputation;

> (2) The services are to be performed for an organization or establishment that has a distinguished reputation for, or record of, employing prominent persons.

The petitioner herein, Trump Model Management LLC, clearly meets both of the criteria enumerated above. The services to be performed by the beneficiary will include modeling garments, coats, underclothing, swimwear, and suits for garments designers, buyers, sales personnel and customers in major periodicals; appear in major fashion shows throughout the country, and participate in fashion runway forums, television and film appearances.

POINT II

THE BENEFICIARY QUALIFIES AS A FASHION MODEL
OF DISTINGUISHED MERIT AND ABILITY WHO HAS
ACHIEVED PROMINENCE IN HER FIELD

8 C.F.R. §214.2(h)(4)(vii)(C) Palmer as follows:

(C) Beneficiary's requirements. A petitioner may establish that a beneficiary is a fashion model of distinguished merit and ability by the submission of documentation showing that the alien has done any two of the following:

3

(1)   Has been the recipient of significant national or international awards or prizes for services performed;

(2)   Has achieved national or international recognition for achievements evidenced by critical reviews or other published material by or about the alien in major newspapers, trade journals, magazines, or other publications;

(3)   Has performed and will perform services as a fashion model for employers that have a distinguished reputation;

(4)   Has received recognition for significant achievements from organizations, critics, or other recognized experts in the field of fashion modeling. Such testimonials must be in a form that clearly indicates the author's authority, expertise, and knowledge of the alien's achievements; or

(5)   Has commanded and now commands a high salary or other substantial remuneration for services in relation to others in the field, as evidenced by contracts or other reliable evidence.

As indicated by the attached documentation, Ms. Palmer clearly meets the criteria as outlined above.  She was discovered through the Caribbean Model Search by Pulse Model Management, one of the most important agencies in Jamaica.  Ms. Palmer is considered one of the top models in the Caribbean and Jamaica.  Throughout Ms. Palmer's career, she has appeared in Fashion editorials spreads for Jamaica Gleaner (the largest and most established newspaper in Jamaica), and in  fashion and beauty editorials for the Jamaica Observer (one of Jamaica's largest national newspaper publication).  Further, Ms. Palmer has appeared in the cover of the Jamaica Observer; fashion editorials for several photographers in Jamaica; fashion editorials for some of Jamaica's leading designers, including Drenna Luna, Julan and Lubica among others. She also has been featured in the Mini Cooper New Countryman Auto Launch fashion show, celebrated in Kingston Jamaica and at several 'Fashion Fix' extravaganzas, at 'Studio 38', Kingston Jamaica.

Ms. Palmer has modeled for some of the best fashion photographers in Jamaica such as Marc Evans, Luca Khouri, Marvin Bartley and Gladstone Taylor.  Indeed, she has been featured in the editorial pages of the Jamaica Gleaner, Jamaica Observer, flair magazine and the Observer Fashion – Under the Dryer.  Such accomplishments place Ms. Palmer as a distinguished fashion model in Jamaica.

4

Further, in accordance with paragraph (5) above, Ms. Palmer will command a salary of $75,000.00 per year, remuneration substantially higher than usually encountered in the field.

## POINT III

### THE LABOR CONDITION REQUIREMENT HAS BEEN MET

The required labor condition application has been filed with the U.S. Department of Labor and approved by the Certifying Officer.

### CONCLUSION

A review of the regulations and pertinent case law clearly establishes that Ms. Palmer merits classification as an H-1B alien.

Your review of the attached H-1B visa petition is respectfully solicited. We thank you for your attention to this matter.

Very truly yours,

WILDES & WEINBERG P.C.

Rafael A. Barreto

Encl.

# Exhibit E

 **- H-1B Advisor**

## Glossary

A- B- C- D- E- F- G- H- I- J- K- L- M- N- O- P- Q- R- S- T- U- V- W- X- Y- Z

**-A-**

### Actual wage

*Actual wage* means the wage rate paid by the employer to all individuals with experience and qualifications similar to the H-1B nonimmigrant's experience and qualifications for the specific employment in question at the place of employment. The actual wage established by the employer is *not* an average of the wage rates paid to all workers employed in the occupation.

### Administrative Law Judge (ALJ)

*Administrative Law Judge (ALJ)* means an official appointed pursuant to 5 U.S.C. 3105.

### Administrator

*Administrator* means the Administrator of the Wage and Hour Division, Department of Labor, and such authorized representatives as may be designated to perform any of the functions of the Administrator under 20 C.F.R. 655, subpart H or subpart I.

### Aggrieved party

*Aggrieved party* means a person or entity whose operations or interests are adversely affected by the employer's alleged non-compliance with the labor condition application and includes, but is not limited to: (1) A worker whose job, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor condition application; (2) A bargaining representative for workers whose jobs, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor condition application; (3) A competitor adversely affected by the employer's alleged non-compliance with the labor condition application; or (4) A government agency which has a program that is impacted by the employer's alleged non-compliance with the labor condition application.

### American Recovery and Reinvestment Act of 2009

American Recovery and Reinvestment Act of 2009.

### Americans with Disabilities Act

*Americans with Disabilities Act* establishes a clear and comprehensive prohibition of discrimination on the basis of disability. (42 U.S.C. 12101 et seq.).

### Alternative employment

*Alternative employment* is a bona fide offer of a similar employment opportunity with the same employer or secondary employer, at equivalent or higher compensation and benefits than the position from which the U.S. worker was discharged, as well as a similar level of authority, discretion, and responsibility, a similar opportunity for advancement within the organization, and similar tenure and work scheduling.

### Area of intended employment

*Area of intended employment* means the area within normal commuting distance of the place (address) of employment where the H-1B nonimmigrant is or will be employed. There is no rigid measure of distance which constitutes a normal commuting distance or normal commuting area, because there may be widely varying factual circumstances among different areas (e.g., normal commuting distances might be 20, 30, or 50 miles.)

### Attestation

*Attestation* means the H-1B employer's agreement to the labor condition statements, which are specifically identified in Form ETA 9035 as well as set forth in the cover pages (Form ETA 9035CP) and incorporated by reference in Form ETA 9035. The labor condition statements are described in detail in:

20 C.F.R. §655.731
20 C.F.R. §655.732
20 C.F.R. §655.733
20 C.F.R. §655.734
20 C.F.R. §655.735
20 C.F.R. §655.736 (if applicable)
20 C.F.R. §655.737 (if applicable)
20 C.F.R. §655.738 (if applicable)
20 C.F.R. §655.739 (if applicable)

### Attorney General

*Attorney General* means the chief official of the U.S. Department of Justice or the Attorney General's designee.

### Authorized agent and authorized representative

*Authorized agent and authorized representative* mean an official of the employer who has the legal authority to commit the employer to the statements in the labor condition application.

**-B-**

### Bargaining representative

*Bargaining representative* means an accredited, exclusive representative of a group of employees authorized by the National Labor Relations Act.

### Benching

*Benching* refers to workers who are in nonproductive status due to a decision by the employer, such as lack of work or a permit. Sometimes this is referred to as "on the bench".

**-C-**

**Certification**

*Certification* means the approval by a certifying official that a labor condition application is complete and does not contain obvious inaccuracies.

**Certifying Officer**

*Certifying Officer* means a Department of Labor official, or such official's designee, who makes determinations about whether or not to certify labor condition applications.

**Chief Administrative Law Judge (Chief ALJ)**

*Chief Administrative Law Judge (Chief ALJ)* means the chief official of the Office of the Administrative Law Judges of the Department of Labor or the Chief Administrative Law Judge's designee.

**Commuting area**

*Commuting area* also called area of intended employment. There is no rigid measure of distance which constitutes a normal commuting distance or normal commuting area, because there may be widely varying factual circumstances among different areas (e.g., normal commuting distances might be 20, 30, or 50 miles).

**Consumer Credit Protection Act, (CCPA)**

*Consumer Credit Protection Act (CCPA)* 15 U.S.C. 1673, and the regulations of the Secretary pursuant to that Act, 29 C.F.R. Part 870, under which garnishment(s) may not exceed 25 percent of an employee's disposable earnings for a workweek.

**Credible source**

*Credible source* is a known person or entity whose operations or interests are not adversely affected by the employer's alleged non-compliance with the labor condition application, but who has knowledge that an H-1B employer willfully failed to meet certain LCA conditions, has engaged in a pattern or practice of failures to meet such conditions, or has committed a substantial failure to meet such conditions that affects multiple employees.

### -D-

**Debarment**

*Debarment* is the prohibition from participating in all immigration programs for a set period of time. Debarment does not invalidate the visas for H-1B workers already employed; however, no extensions will be granted. The Wage and Hour Division maintains a current online list of such debarred employers, List of H-1B willful violators.

**Department** and **DOL**

*Department* and *DOL* mean the United States Department of Labor.

**DHS**

*DHS* means Department of Homeland Security.

**Dependent employer**

*Dependent employer* is an H-1B employer who has: 25 or fewer full-time employees and at least eight H-1B workers; or 26-50 full-time employees and at least 13 H-1B workers; or 51 or more full-time employees of whom 15% or more are H-1B workers.

**Displacement**

*Displacement* is the replacement of a U.S. worker by an H-1B worker in an essentially equivalent job and occurs within the period beginning 90 days before and ending 90 days after the filing date of an H-1B visa petition. When the U.S. worker and the H-1B worker are employed by the same employer, it is often called direct displacement. See also secondary displacement.

**Displacement inquiry**

*Displacement inquiry* is an obligation of H-1B dependent employers and/or willful violators when they desire to place an H-1B (excluding H-1B1 or E-3) nonimmigrant with another/secondary employer where there are indicia of an employment relationship. The H-1B employer must receive assurances that no U.S. worker similarly employed has been or will be displaced during the period beginning 90 days before and extending to 90 days after the placement of the H-1B worker before a placement can occur.

**Division**

*Division* means the Wage and Hour Division (WHD) of the U.S. Department of Labor.

### -E-

**E-3 worker**

*E-3 worker* is a temporary, nonimmigrant of Australia in a specialty occupation given status to work for an employer by USCIS via Form I-797, Notice of Action. Initial status may be granted for up to two years and is renewable. There is an annual cap of 10,500 visas.

**Early cessation penalty**

*Early cessation penalty* is an amount which (although fixed or stipulated in the contract by the parties) is not a reasonable approximation or estimate of anticipated or actual damage caused to one party by the other party's breach of contract. Early cessation penalties cannot be imposed on the H-1B worker. They are distinguished from liquidated damages on the basis of applicable state law.

**Employ American Workers Act**

Employ American Workers Act is at section 1611 of the American Recovery and Reinvestment Act of 2009 at page 191 of 407.

**Employed, employed by the employer, or employment relationship**

*Employed, employed by the employer, or employment relationship* means the employment relationship as determined under the common law, under which the key determinant is the putative employer's right to control the means and manner in which the work is performed. Under the common law, "no shorthand formula or magic phrase * * * can be applied to find the answer * * *. [A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *NLRB v. United Ins. Co. of America, 390 U.S. 254, 258 (1968).*

**Employer**

*Employer* means a person, firm, corporation, contractor, or other association or organization in the United States which has an employment relationship with H-1B nonimmigrants and/or U.S. worker(s). The person, firm, contractor, or other association or organization in the United States which files a petition on behalf of an H-1B nonimmigrant is deemed to be the employer of that H-1B nonimmigrant.

### Employment and Training Administration (ETA)

Employment and Training Administration (ETA) is the agency within the U.S. Department of Labor which includes the Office of Foreign Labor Certification (OFLC) and the Office of Workforce Security (OWS).

### Employment Authorization Document (EAD)

*Employment Authorization Document (EAD)* is issued by USCIS as evidence that a worker who is not a citizen or a lawful permanent resident is permitted to work.

### Enter into employment

*Enter into employment* occurs when workers first make themselves available for work or otherwise come under the control of the employer, such as by waiting for an assignment, reporting for orientation or training, going to an interview or meeting with a customer, or studying for a licensing examination, and includes all activities thereafter.

### Essentially equivalent jobs

*Essentially equivalent jobs* must involve essentially the same duties and responsibilities, qualifications and experience, and area of employment. The comparison focuses on the core elements of and competencies for the job, such as supervisory duties, or design and engineering functions, or budget and financial accountability and not peripheral, non-essential duties. Only the experience and qualifications (e.g., training, education, ability) of the workers which are directly relevant to the actual performance requirements of the job are considered.

### Exempt employee (FLSA)

*Exempt employee (FLSA)* in the context of H-1B workers generally refers to the professional workers who are exempted from the overtime requirements of the Fair Labor Standards Act (29 U.S.C. 201 et seq.). This is not to be confused with the term exempt H-1B worker of an H-1B dependent employer or H-1B willful violator.

### Exempt H-1B worker

*Exempt H-1B worker* is an H-1B worker who receives at least $60,000 per year in wages or has attained a master's or higher degree in a specialty related to the intended employment. If an H-1B dependent employer or a willful violator employs only exempt H-1B workers on an LCA where the employer has attested to hiring only exempt workers, the employer is relieved from the additional obligations (nondisplacement, recruitment, and hiring) with which the employer would otherwise be required to comply. This is not the same as exempt under the FLSA.

**-F-**

### Family and Medical Leave Act

Family and Medical Leave Act (29 U.S.C. 2601 et seq.) is a federal law that ensures that eligible workers are able to take unpaid extended leaves of absence from work to handle certain family issues or illness. Where workers have earned paid time off, this pay may be substituted for the unpaid period.

### Form 1099

*Form 1099* is an IRS form used to report various types of income other than wages, salaries, and tips.

### Form ETA 9035

Form ETA 9035/9035E, Labor condition application (LCA), is a document that a prospective H-1B employer files with ETA when it seeks to employ nonimmigrant workers at a specific job occupation in an area of intended employment for not more than three years. In this document, the employer attests to standards to which it will adhere. It must be certified by the authorized DOL official pursuant to the provisions of 20 C.F.R. §655.740 before it can be used.

### Form I-129

*Form* I-129 is the petition filed with USCIS by a prospective H-1B employer seeking approval to employ an H-1B worker.

### Form I-797

*Form I-797* is a notice of action issued by USCIS when it receives a visa petition from an employer for an H-1B nonimmigrant, approves the petition, or takes any subsequent action.

### Form W-2

*Form W-2* is the form that an employer must send to an employee and the IRS at the end of the year. The W-2 form reports an employee's annual wages and the amount of taxes withheld from his or her paycheck.

### Fringe benefits

*Fringe benefits* include the opportunity to participate in programs such as: health, life, disability and other insurance plans; retirement and savings plans; cash bonuses; and non-cash compensation such as stock options.

### Full-time equivalent employees

*Full-time equivalent employees* include only persons employed by the employer and do not include *bona fide* consultants and independent contractors. Part-time employees are aggregated to a number of full-time equivalents based upon the number of hours worked as compared to 40.

**-G-**

### Garnishment

*Garnishment* is the withholding of wages for the payment of a debt. It is regulated by the Consumer Credit Protection Act, (CCPA).

**-H-**

### H-1B cap

*H-1B cap* is the number of new H-1B visas that are issued in a fiscal year. The visas are counted as one H-1B visa per person. The number of visas issued in previous fiscal years is not considered or counted. As of 2008, the cap was 65,000 per/year. 6,800 of these visas are set aside for H-1B1 status for similar foreign workers from Chile and Singapore. There are an

additional 10,500 E-3 visas for similar workers from Australia. H-1B visa renewals or visa transfers to a different employer do not count towards the cap, nor do up to 20,000 foreign workers who received a Masters' or higher from a U.S. educational institution. Furthermore, there is no limit on the number of visas issued to U.S. universities and research institutions.

### H-1B dependent employer

*H-1B dependent employer* has: 25 or fewer full-time employees and at least eight H-1B workers; or 26-50 full-time employees and at least 13 H-1B workers; or 51 or more full-time employees of whom 15% or more are H-1B workers.

### H-1B worker

*H-1B worker* is a temporary, nonimmigrant in a specialty occupation (professional or fashion model of high distinction) given status to work for an employer by USCIS via Form I-797, Notice of Action. Initial status may be granted for up to three years. Extensions may only be granted for a period of time such that the total period of the nonimmigrant's admission does not exceed six years

### H-1B1 worker

*H-1B1 worker* is a temporary, nonimmigrant of Chile or Singapore in a specialty occupation given status to work for an employer by USCIS via Form I-797, Notice of Action. Initial status may be granted for up to one year. Status may be renewed twice, but only in one-year increments. There is an annual cap of 1,400 nationals of Chile and 5,400 nationals of Singapore as of 2008.

-I-

### INA

*INA* means the *Immigration and Nationality Act*, as amended, 8 U.S.C. 1101 et seq.

### Independent authoritative source

*Independent authoritative source* means a professional, business, trade, educational or governmental association, organization, or other similar entity, not owned or controlled by the employer, which has recognized expertise in an occupational field.

### Independent authoritative source survey

*Independent authoritative source survey* means a survey of wages conducted by an independent authoritative source and published in a book, newspaper, periodical, loose-leaf service, newsletter, or other similar medium, within the 24-month period immediately preceding the filing of the employer's application. Such survey shall: (1) Reflect the average wage paid to workers similarly employed in the area of intended employment; (2) Be based upon recently collected data—e.g., within the 24-month period immediately preceding the date of publication of the survey; and (3) Represent the latest published prevailing wage finding by the authoritative source for the occupation in the area of intended employment.

### Indicia of an employment relationship

*Indicia of an employment relationship* between the other/secondary employer and an H-1B nonimmigrant (excluding H-1B1 and E-3) include such factors as: (A) the right to control when, where, and how the nonimmigrant performs the job; (B) the other/secondary employer furnishes the tools, materials, and equipment; (C) the work is performed on the premises of the other/secondary employer; (D) a continuing relationship between the nonimmigrant and the other/secondary employer; (E) the other/secondary employer has the right to assign additional projects; (F) the other/secondary employer sets the hours of work and the duration of the job; (G) the work performed by the nonimmigrant is part of the regular business of the other/secondary employer; (H) the other/secondary employer is itself in business; and (I) the other/secondary employer can discharge the nonimmigrant from providing services. It is not necessary for all of the factors to be present in order to determine the existence of indicia of an employment relationship.

### Interested party

*Interested party* means a person or entity who or which may be affected by the actions of an H-1B employer or by the outcome of a particular investigation and includes any person, organization, or entity who or which has notified the Department of interest or concern in the Administrator's determination.

### Industry

*Industry* means the set of employers which primarily competes for the same types of workers as those who are the subjects of the H-1B petitions to be filed pursuant to the LCA. Thus, a hospital, university, or computer software development firm is to use the recruitment standards utilized by the health care, academic, or information technology industries, respectively, in hiring workers in the occupations in question. Similarly, a staffing firm, which places its workers at job sites of other employers, is to use the recruitment standards of the industry which primarily employs such workers [e.g., the health care industry, if the staffing firm is placing physical therapists (whether in hospitals, nursing homes, or private homes); the information technology industry, if the staffing firm is placing computer programmers, software engineers, or other such workers].

-J-

-K-

-L-

### Labor condition application (LCA)

*Labor condition application (LCA)*, Form ETA 9035/9035E is a document that a prospective H-1B employer files with OFLC when it seeks to employ nonimmigrant workers at a specific job occupation in an area of intended employment for not more than three years. In this document, the employer attests to standards to which it will adhere. It must be certified by the authorized DOL official pursuant to the provisions of 20 C.F.R. §655.740 before it can be used.

### Lay off

*Lay off* of a U.S. worker means that the employer has caused the worker's loss of employment, other than through: discharge due to inadequate performance, violation of workplace rules, or other cause related to the worker's performance or behavior on the job; voluntary departure or voluntary retirement; expiration of a grant or contract under which worker is employed where the loss of the contract or grant has caused the worker's loss of employment, and there is no practice of moving workers to other customers or projects upon the expiration of contract(s); or there is a rejection of a bona fide offer of a similar employment opportunity with the same employer.

### Legitimate source of wage information

*Legitimate source of wage information* is a survey that meets all the criteria set forth in 20 C.F.R. §655.731(b)(3)(iii)(C). The employer will be required to demonstrate the legitimacy of the wage in the event of an investigation.

### Liquidated damage (LD)

*Liquidated damage (LD)* is an amount which is fixed or stipulated by the parties at the inception of the contract and which is a reasonable estimate of anticipated or actual damage caused to

one party by the other party's breach of contract. It is distinguished from an early cessation penalty on the basis of the applicable state law. The laws of various states recognize that LDs can be imposed on the H-1B worker.

---

*Lockout*

*Lockout* means a labor dispute involving a work stoppage, wherein an employer withholds work from its employees in order to gain a concession from them.

**-M-**

*Master's or higher degree in a specialty related to the intended employment*

*Master's or higher degree in a specialty related to the intended employment* means a foreign academic degree from an institution which is accredited or recognized under the law of the country where the degree was obtained, and which is equivalent to a master's or higher degree issued by a U.S. academic institution. The equivalence to a U.S. academic degree cannot be established through experience or through demonstration of expertise in the academic field. "Specialty related to the intended employment," for purposes of this section, means that the academic degree is in a specialty which is generally accepted in the industry or occupation as an appropriate or necessary credential or skill for the person who undertakes the employment in question. A "specialty" which is not generally accepted as appropriate or necessary to the employment would not be considered to be sufficiently "related" to afford the H-1B nonimmigrant status as an "exempt H-1B nonimmigrant".

---

*Material fact*

*Material fact* means a significant item of information on the LCA, such as: the number of H-1B workers sought; the occupational classification for the worker sought; the rate of pay; the address where documents are kept; the three-digit occupational group code; the job title; the part-time status of the employee; the prevailing wage rate and its source; the period of employment; the location where the H-1B worker will work; and the additional employer labor condition statements.

---

*Misrepresentation*

*Misrepresentation* is a statement that was false at the time it was made.

**-N-**

*National Processing Center (NPC)*

*The National Processing Center* is established by the Office of Foreign Labor Certification (OFLC). Under the H-1B program it is responsible for processing LCAs and determining prevailing wages, upon request.

---

*Nonfrivolous petition*

*Nonfrivolous petition* is an I-129 petition which does not lack in legal sufficiency as determined by USCIS.

---

*Nonproductive status*

*Nonproductive status* is a period when the H-1B worker is not performing work. If this is due to a decision by the employer, such as lack of work or license, it is fully compensable at the required wage rate. When due to conditions unrelated to employment which take the nonimmigrant away from work duties at one's voluntary request and convenience (e.g., touring the U.S., caring for ill relative) or render the nonimmigrant unable to work (e.g., maternity leave, automobile accident which temporarily incapacitates the nonimmigrant), it is not compensable unless there is paid time off accrued and owing.

---

*Notice*

*Notice* refers to two requirements. A copy of the LCA Form ETA 9035 must be given to each H-1B worker. An employer seeking to employ an H-1B nonimmigrant must inform employees in the same occupational classification at the worksite of its intention to employee an H-1B worker including certain information contained on the LCA and must maintain documentation of this notice.

**-O-**

*Occupation*

*Occupation* means the occupational or job classification in which the H-1B nonimmigrant is to be employed.

---

*OES*

*OES* is the Occupational Employment Statistics survey conducted by DOL, Bureau of Labor Statistics (BLS), available on line.

---

*The Occupational Information Network (O\*NET)*

*The* Occupational Information Network (O\*NET) is a database of occupational requirements and worker attributes, available on line.

---

*Office of Foreign Labor Certification (OFLC)*

Office of Foreign Labor Certification is the office within the Employment and Training Administration (ETA) of the U.S. Department of Labor that certifies foreign labor applications for employers seeking to bring foreign workers into the United States for employment.

---

*Office of Workforce Security (OWS)*

Office of Workforce Security (OWS) means the agency of the Department which is charged with administering the national system of public employment offices.

**-P-**

*Per diem*

*Per diem* is generally understood to include the consideration for the additional expenses that a worker has living away from home. When an employer reports an employee's earning at the end of the year on a Form W-2, per diem is listed separately from taxable income, under 'Misc. non-taxable'. It is important to remember that such payments are not included in the required wage rate.

---

*Peripatetic*

*Peripatetic* means constantly traveling from place to place with no regular place of business or residence.

---

*Period of intended employment*

*Period of intended employment* means the time period between the starting and ending dates inclusive of the H-1B nonimmigrant's intended period of employment in the occupational classification at the place of employment as set forth in the labor condition application.

*Petition*

*Petition* refers to the Form I-129 that is filed with USCIS by a prospective H-1B employer seeking approval to employ an H-1B worker and its accompanying documents in support of the visa request.

*Petition package*

*Petition package* refers to the petition Form I-129, accompanying letter in support of the petition, LCA, and any other documentation about the prospective worker that is submitted to USCIS with the petition.

*Place of employment*

*Place of employment* means the worksite or physical location where the work actually is performed.

*Portability*

*Portability* is a provision of the INA intended to preserve the legal status of an H-1B worker who is already in the U.S. Portability allows the employed H-1B worker to enter into employment with a new employer provided that, the new employer has filed a nonfrivolous petition (I-129) for the employment of the H-1B worker before the date of expiration of the H-1B worker's authorized period of stay, and the new employer has submitted, along with its petition, an unexpired, approved LCA covering the same work that the individual is being hired to perform. The new employer may already hold an applicable LCA, or may have sought and received a new LCA in order to submit the petition.

*Prevailing wage*

*Prevailing wage* is defined as the average wage paid to similarly employed workers in the requested occupation in the area of intended employment.

*Procedural failure*

*Procedural failure* means a minor procedural discrepancy, mistake, or omission.

*Public access file*

*Public access file* means documentation that is available for public examination at the employer's principal place of business in the U.S. or at the place of employment.



**-Q-**
**-R-**

*Reasonable cause*

*Reasonable cause* to conduct an investigation is based upon employer coverage (certified LCA) and an allegation of a violation occurring within the 12 months immediately preceding the Department of Labor's receipt of a complaint, which, if true, would constitute a violation of the program.

*Recruitment*

*Recruitment* is the process to attract the attention of individual(s) who may apply for employment. The employer may use a variety of solicitation methods, including internal (recruiting from within the company) to external (seeking employees from outside the company). The solicitation techniques may be active (seeking out candidates, involving direct communication with potential applicants) and/or passive (waiting for candidates to respond to notices, involving the general distribution of information about available positions).

*Required wage rate*

*Required wage rate* means the rate of pay which is the higher of: (1) the actual wage for the specific employment in question; or (2) the prevailing wage rate (determined as of the time of filing the application) for the occupation in which the H-1B nonimmigrant is to be employed in the geographic area of intended employment. The prevailing wage rate must be no less than the minimum wage required by federal, state, or local law.

*Retaliation*

*Retaliation* includes intimidating, threatening, restraining, coercing, blacklisting, discharging, or discriminating in any other manner against a worker who has exercised worker rights under the H-1B program.



**-S-**

*Secondary displacement*

*Secondary displacement* is a prohibition against the placement of an H-1B (excluding H-1B1 or E-3) nonimmigrant with another/secondary employer where there are indicia of an employment relationship unless and until the H-1B employer makes certain inquiries of the other/secondary employer and receives assurances that no U.S. worker similarly employed has been or will be displaced during the period beginning 90 days before and extending to 90 days after the placement of the H-1B worker. This prohibition is an additional obligation required of H-1B dependent employers and/or willful violators. See also displacement.

*Secondary employer*

*Secondary employer* is a business where an H-1B worker is sent to work by the employer who is the sponsor of the H-1B visa.

*Secretary*

*Secretary* means the Secretary of Labor or the Secretary's designee.

*Short-term placement*

*Short-term placement* allows an H-1B nonimmigrant to work at any worksite(s) in an area of employment not listed on the employer's approved LCA(s) provided it does not exceed a total of 30 workdays in a one-year period for any H-1B nonimmigrant at any worksite or combination of worksites in the area. Some placements may be extended to no more than a total of 60 workdays in a one-year period where the employer is able to show the following: (1) the H-1B nonimmigrant continues to maintain an office or work station at his/her permanent worksite; (2) the H-1B nonimmigrant spends a substantial amount of time at the permanent worksite in a one-year period; and (3) the H-1B nonimmigrant's U.S. residence or place of abode is located in the area of the permanent worksite and not in the area of the short-term worksite(s).

*Similarly employed*

*Similarly employed* means having substantially comparable jobs in the occupational classification in the area of intended employment. If no such workers are employed by employers other than the employer applicant in the area of intended employment, similarly employed means having jobs requiring a substantially similar level of skills within the area of intended

employment. If there are no substantially comparable jobs in the area of intended employment, similarly employed means having substantially comparable jobs with employers outside of the area of intended employment.

### Snap-shot

*Snap-shot* method of determining dependency permits an employer to calculate dependency based upon full-time employees, without consideration for part-time employees who may yield full-time equivalents. If this result yields a close dependency status, the employer must make a full calculation in order to claim non-dependency.

### Specialty occupation

*Specialty occupation* means an occupation that requires theoretical and practical application of a body of highly specialized knowledge, and attainment of a bachelor's or higher degree (or its equivalent) in the specific specialty as a minimum for entry into the occupation in the United States. The nonimmigrant in a specialty occupation shall possess the following qualifications: (1) full state licensure to practice in the occupation, if licensure is required for the occupation; (2) completion of the required degree; or (3) experience in the specialty equivalent to the completion of such degree and recognition of expertise in the specialty through progressively responsible positions relating to the specialty. 8 U.S.C. 1184(i) Determinations of specialty occupation and of nonimmigrant qualifications are made by USCIS.

### Specific employment in question

*Specific employment in question* means the set of duties and responsibilities performed or to be performed by the H-1B nonimmigrant at the place of employment.

### State

*State* means one of the 50 States, the District of Columbia, Guam, Puerto Rico, Commonwealth of the Northern Mariana Islands, and the U.S. Virgin Islands.

### State Employment Security Agency (SESA)

*State Employment Security Agency (SESA)* means the State agency designated under section 4 of the Wagner-Peyser Act to cooperate with OWS in the operation of the national system of public employment offices. It is now known as the State Workforce Agency (SWA).

### State Workforce Agency (SWA)

*State Workforce Agency (SWA)* means the State agency designated under section 4 of the Wagner-Peyser Act to cooperate with OWS in the operation of the national system of public employment offices. It was previously known as the State Employment Security Agency (SESA).

### Strike

*Strike* means a labor dispute wherein employees engage in a concerted stoppage of work (including stoppage by reason of the expiration of a collective bargaining agreement), any concerted slowdown, or other concerted interruption of operation.

### Super penalty

*Super penalty* is a civil money penalty (CMP) not to exceed $35,000 accompanied by debarment not to exceed three years as a result of any H-1B employer displacing a U.S. worker in conjunction with a willful violation of the provisions of 20 C.F.R. §655.805(a)(2) through (9) or a willful misrepresentation of a material fact on the labor condition application, 20 C.F.R. 655.805(a)(1).

**-T-**

### TARP

Troubled Assets Relief Program (TARP) is Title 1 of Emergency Economic Stabilization Act of 2008

### Technical failures

*Technical failures* are minor violations which do not result in or cause substantive violations of the statute. Such technical failures may include clerical errors, insignificant failure to comply, or inadvertent mistakes.

**-U-**

### United States Citizenship and Immigration Services (USCIS)

United States Citizenship and Immigration Services *(USCIS)* means the component of the Department of Homeland Security (DHS) which makes the determination under the INA on whether to grant visa petitions to employers seeking the admission of nonimmigrants under H-1B visas for the purpose of employment.

### United States worker

*United States worker* means an employee who is either a citizen or national of the United States, or an alien who is lawfully admitted for permanent residence in the United States, is admitted as a refugee under section 207 of the INA, is granted asylum under section 208 of the INA, or is an immigrant otherwise authorized (by the INA or by the Attorney General) to be employed in the United States.

**-V-**

### Validity of certified labor condition applications

*Validity of certified labor condition applications.* A labor condition application which has been certified by OFLC shall be valid for the period of employment indicated on Form ETA 9035 by the authorized DOL official; however, in no event shall the validity period of a labor condition application begin before the application is certified or exceed three years. Where the labor condition application contains multiple periods of intended employment, the validity period shall extend to the latest date indicated or three years, whichever comes first.

### Wage and Hour Division (WHD)

Wage and Hour Division *(WHD)* is the agency of the U.S. Department of Labor, responsible for enforcing the LCA attestations, as well as promoting and achieving compliance with many other labor standards established to protect and enhance the welfare of the U.S. workforce.

**-W-**

### Wage rate

*Wage rate* means the remuneration (exclusive of fringe benefits) to be paid, stated in terms of amount per hour, day, month, or year (see definition of Required Wage Rate).

### Willful

*Willful* means a knowing failure or a reckless disregard with respect to whether the employer's conduct was contrary to section 212(n)(1)(A)(i) or (ii) of the INA, or 20 C.F.R. §§655.731 or 655.732. See McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988); see also Trans World Airlines v. Thurston, 469 U.S. 111 (1985).

---

**Willful violator**

*Willful violator* is an H-1B employer who, by final agency action of the Department of Labor or Department of Justice, has been found to have willfully violated the H-1B provisions. The Wage and Hour Division maintains a current online list of such willful violators, H-1B Willful Violator List of Employers.

---

**Withdrawal of certified labor condition applications**

*Withdrawal of certified labor condition applications* may take place at any time before the expiration of the validity period of the application, provided that no H-1B nonimmigrants are employed at the place of employment pursuant to the labor condition application, and the WHD Administrator has not commenced an investigation of the particular application. Requests for withdrawals shall be in writing and shall be directed to the ETA service center.

---

**Workday**

*Workday* shall mean any day on which an H-1B nonimmigrant performs any work at any worksite(s) within the area of short-term placement or assignment.

---

**Working conditions**

*Working conditions* include matters such as hours, shifts, vacation periods, and benefits such as seniority-based preferences for training programs and work schedules.

---

**Worksite**

*Worksite* means the place of employment or physical location where the work actually is performed.

**-X-**
**-Y-**
**-Z-**

---

Go Back

# Exhibit F

Date: 18 JANUARY 2011
Name: ALEXIA PALMER
U.S. Address: _____

I hereby engage the services of Trump Model Management LLC ("**Manager**") as my personal and exclusive manager, in New York, with respect to the selection of career opportunities, publicity, public relations, advertising and other matters, relating to my professional career in the modeling, advertising, promotion, entertainment, and similar fields. Manager will use reasonable efforts to supervise, negotiate and arrange the terms of any and all offers of employment or contracts for my services, and to send invoices and statements to clients for whom I shall have rendered services and endeavor to collect fees due for such services.

Whereas, I was introduced to Manager by Pulse Investments Ltd of 38a Trafalgar Road, Kingston 10, Jamaica and whereas, Pulse is my Mother agency and will remain as such for the duration of my stay with Trump Model Management, Pulse may in furtherance of my career, engage such foreign agents and/or televisions agents to work with me as Pulse deems appropriate.

I hereby appoint Manager as my lawful attorney-in-fact coupled with an interest, to: (i) exclusively collect and receive monies on my behalf, (ii) endorse my name upon any and all checks, drafts, notes and other instruments payable to me and deposit same in Manager's account and deduct and retain any monies due to Manager under this Agreement; (iii) authorize, approve and permit the use of my name, photograph, likeness and voice, and (iv) sign releases on my behalf. The foregoing power of attorney shall be irrevocable during the term of this Agreement and, thereafter, with respect to any matter for which Manager is entitled to compensation hereunder.

I agree to promptly reimburse Manager for any and all costs and expenses Manager may incur, or any monies Manager may advance, in connection with my professional activities hereunder, including, but not limited to, publicity or promotional costs, travel and transportation expenses. I understand that Manager is under no obligation to make advances for any such costs and expenses. If I fail to promptly reimburse Manager for such costs and expenses, they may be deducted from any monies held by Manager on my behalf.

I will appear punctually, suitably groomed and dressed in accordance with the client's instructions for all scheduled assignments, and if I shall fail to do so in any respect I will be responsible for any losses or expenses incurred by Manager as a result thereof, including any fees paid to other models and fees or commissions lost by Manager.

I acknowledge that Manager shall be performing its services hereunder as an independent contractor and not as my employer. Manager is not an "artists manager" and doesn't represent that it is licensed as an artist's manager under the Labor Code of the State of California, or any other state; and Manager is not acting hereunder as an employment agent and does not represent that it is licensed as an employment agency under the General Business Law of the State of New York, or any other state.

I agree to pay to Manager _twenty_ **(20 %)** percent of all amounts received by or due to me for any employment, engagement, commitment or contract for my services (regardless of the nature of the services which I perform there under or the form of consideration due to me) ("**Engagement**") in existence on the date hereof or negotiated for or entered into during the term hereof, including any renewal, extension, addition, modification or substitution of any such Engagement. In the case of television appearances for commercials or otherwise, the foregoing percentage shall equal the maximum amount permitted by the terms of any applicable television industry requirement. The expiration or termination of this Agreement shall not affect Manager's rights to compensation as herein provided.

Manager shall have the right to deduct from all amounts paid or due to me during the term of this Agreement (or thereafter, as provided below) all (i) commissions, compensation, or consideration due Manager hereunder; (ii) any and all fees, costs and expenses advanced or incurred by Manager on my behalf; and (iii) the amount of any outstanding advances made to me, and Manager shall remit the balance of such amounts to me. I acknowledge and agree that Manager shall be entitled to receive, in accordance with industry practice, a separate commission and/or service charge or "agency fee" from clients who utilize my services.

The term of this Agreement shall be for a period of one (1) year, commencing as of the date first above set forth, and shall be automatically renewed for successive additional one (1) year periods unless either I or Manager gives

written notice to the other to terminate this Agreement, which notice shall be received by the other party at least sixty (60) days prior to the end of the initial or any renewal period.

I warrant and represent to Manager that I: (i) have the full right, power and authority to enter into this Agreement and to grant to Manager the rights herein granted; and (ii) I am of legal age and have the legal right and capacity to enter into this Agreement or if I am not of legal age and do not have such right and capacity. I warrant and represent that the signature below is that of my legal guardian.

I agree that, in consideration of this Agreement, all commissions, compensation or other consideration payable to Manager under any Engagement which is in existence during the Term hereof, shall continue to be paid to Manager so long as such Engagement (and any modification, amendment, addition, extension or replacement thereof) shall remain in effect, notwithstanding the expiration or termination of this Agreement.

In the event I claim that Manager has breached any term or provision of this Agreement on Manager's part to perform, I will notify Manager in writing of the specific facts constituting the alleged breach. Manager shall have a period of sixty (60) days following receipt of such notice to cure the alleged breach.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and wholly performed therein, and may not be changed in any manner unless such changes are in writing and signed by both Manager and myself.

I acknowledge that I have read and understand the terms and conditions of this Agreement and have discussed or have had ample opportunity to discuss them with legal and other advisors of my choice.

**IN WITNESS THEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

ACCEPTED AND AGREED:

MANAGER:
TRUMP MODEL MANAGEMENT LLC

By: _____
　　　Authorized Signatory

_____
Signature

ALEXIA PALMER
Print name

_____
Social Security Number

30 SEPTEMBER 1993
Date of Birth

Doxie Tucker
Talent's Parent/Legal Guardian Signature

DOXIE TUCKER (MOTHER)
Print Name

_____
Talent's Parent/Legal Guardian Signature

_____
Print Name

L:\BRD\TManagGrp\Employ\MASTER (short)Personal Manag Agrt-Model-Talent .doc

# Exhibit G



Search

 
LIBERTY UNIVERSITY   RESIDENT & ONLINE   EARN YOUR DEGREE IN RELIGION   LEARN MORE 

HOME    VISA    FORUMS    COMPANIES    LATEST JOBS    FAQ'S    REPORTS

Share    Tweet  0    g+1  0    Pin it

### Search Sponsors

Name

Zip code

Report

Visa

Salaries

Jobs

Reviews

**Average Salary, H1B Visa, Green Card Perm report for TRUMP MODEL MANAGEMENT**

**H1B and Green Card Application Trends for TRUMP MODEL MANAGEMENT**

**USCIS Green Card Forms**

immigrationdirect.com

Prepare USCIS Green Card Forms Online. Save Time & Avoid Errors.

Transfer your H1

Sponsors H1 and GC for IT

Free Green Card Labor

(chart: H1B Visa / PERM Application, years 2004–2013, y-axis 0–14)

🟧 H1B Visa   🟩 PERM Application

AdChoices ▷   ► F1 to H1B   ► H1B Visa   ► Green Card   ► H1B Jobs

View latest Salary Trends on all new Salary Square
- Salary By Companies
- Salary By Cities
- Salary By Sectors
- Salary By Job Titles
- Facebook Salaries
- Twitter Salaries
- New York Salaries
- San Francisco Salaries
- Management Analysts Salaries
- Financial Analysts Salaries

**H1B and Green Card Yearly Acceptance/Denial Stats for TRUMP MODEL MANAGEMENT**

| Year | 2013 | 2012 | 2011 | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | 2004 |
|---|---|---|---|---|---|---|---|---|---|---|
| Application | H1B | H1B | H1B | H1B | H1B | H1B | H1B | H1B | H1B | H1B |
| Applied | 5 | 6 | 15 | 5 | 1 | 1 | 2 | 9 | 11 | 7 |
| Denied | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |

Click here to check TRUMP 's latest jobs.

**H1B and Green Card Salary Trends for TRUMP MODEL MANAGEMENT**

| Year | Application | Job Title | Average Salary | Jobs Applied |
|---|---|---|---|---|
| 2013 | H1B | Natural Sciences Managers | $60,000 | 6 |
| 2012 | H1B | Natural Sciences Managers | $75,833 | 6 |

| Name | Details |
|---|---|
| H1B Visa Rank | 8217 |
| H1B Visa 2001 - 2011 | 62 |
| H1B Visa Denied 2000-2011 | 2 |
| H1B Visa 2011 | 5 |
| H1B Visa Denied 2011 | 1 |
| Green Card Perm Rank | 0 |
| Green Card 2000-2011 | 0 |
| Green Card Denied 2005-2011 | 0 |
| Green Card 2011 | 0 |
| Green Card Denied 2011 | 0 |

The above table displays data for Labor Condition Application(LCA for H1B visa) and Labor Certification(LC for Green Card) application filed by TRUMP MODEL MANAGEMENT year over year from 2000 to 2012.
**Please see links below which explain meaning of LCA and LC**
LCA : http://tinyurl.com/visasquare-Labor-Condition-App

### Search Jobs

keywords

job title or skills

location

city, state or zip

Search Jobs

Jobs by SimplyHired

0

Tweet

0

g+1

**Capital One® Credit Cards**

capitalone.com

Go from Zero to Card in 60 seconds. Find an offer that's right for you.

NIW Green Card-Guaranteed

PERM Labor Certification

Home Depot® Appliances

**2014 Top H1B Visa & Green Card Sponsors Reports**
- 2014 Top H1B Sponsors
- 2014 Top H1B Sponsors By States
- 2014 Top H1B Sponsors By Cities
- 2014 Top H1B Sponsors By Sectors
- 2014 Top H1B Sponsors By Job Titles
- 2014 Top GC Sponsors
- 2014 Top GC Sponsors By States
- 2014 Top GC Sponsors By Cities
- 2014 Top GC Sponsors By Sectors
- 2014 Top GC Sponsors By Job Titles

**2013 Top H1B Visa & Green Card Sponsors Reports**
- 2013 Top H1B Sponsors
- 2013 Top H1B Sponsors By States
- 2013 Top H1B Sponsors By Cities

LC : http://tinyurl.com/visasquare-labor-certification

62 H1B LCA's has been applied by TRUMP MODEL MANAGEMENT since 2000. 2 application for H1B LCA's has been denied during this period.
0 Green Card LC's has been applied by TRUMP MODEL MANAGEMENT since 2000. 0 application for Green Card LCA's has been denied during this period.

**TRUMP MODEL MANAGEMENT filed 5 H1B LCA's and 0 Green Card LC's for the year 2011**

**TRUMP MODEL MANAGEMENT ranks 8217 in H1B applications in VisaSquare Top H1B Company Ranks.**

The number does not mean that actually got the visa and hired the workers. In case of renewal or transfers of an employee's H1B visa or change work location under some circumstances, a new LCA application is filled. Department of Labor(DOL) typically certifies more than 3 times the number of foreign work requests than the number of H1B visas issued by USCIS. S i.e. there is none to one relationship between the number of H1B work visas issued by the United States Citizenship and Immigration Services (USCIS) and the number of workers certified by the DOL.

- 2013 Top H1B Sponsors By Sectors
- 2013 Top H1B Sponsors By Job Titles
- 2013 Top GC Sponsors
- 2013 Top GC Sponsors By States
- 2013 Top GC Sponsors By Cities
- 2013 Top GC Sponsors By Sectors
- 2013 Top GC Sponsors By Job Titles

### Most Innovative Companies

- FACEBOOK INC
- AMAZON GLOBAL RESOURCES INC
- GOOGLE INC
- IBM
- YAHOO!
- VMWARE USA INC
- ORACLE USA INC
- GOLDMAN SACHS CO
- APPLE INC
- MCKINSEY CO INC UNITED STATES
- CISCO SYSTEMS INC
- MICROSOFT CORP
- TWITTER INC
- QUALCOMM
- LINKEDIN CORPORATION
- MOTOROLA

### Top Greencard Sponsoring Companies

- MICROSOFT CORP
- COGNIZANT TECHNOLOGY SOLUTIONS U S
- INTEL CORP
- CISCO SYSTEMS INC
- GOOGLE INC
- QUALCOMM
- ORACLE USA INC
- MOTOROLA
- IBM
- TEXAS INSTRUMENTS
- BANK OF AMERICA
- NEW YORK CITY DEPARTMENT OF EDUCATION
- J P MORGAN CHASE
- RITE AID CORPORATION
- NVIDIA CORP

Visa | Green Card | Forums| Companies| Privacy Statement| Terms of Use| Site Map

Copyright @ 2012, Visa Square.com. All Rights Reserverd.

# Exhibit H



**GEHI & ASSOCIATES**
ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING · 118-21 QUEENS BLVD. · SUITE 411, 4TH FL. · FOREST HILLS, NY 11375
TEL: (718) 263-5999 · FAX: (718) 263-1685

July 18, 2014

**<u>URGENT REVIEW REQUESTED</u>**

*Via Federal Express Overnight*

Trump Model Management, LLC
National Registered Agents, Inc.
111 Eighth Avenue
New York, NY 10011

      RE:   **ALEXIA SUZETT PALMER**

Dear Sir or Madam:

      This office represents Ms. Alexia Suzett Palmer. Trump Model Management,
LLC ("TMM") entered an agreement with my client on or about January 18, 2011. My
client alleges that TMM engaged in serious violations of immigration law, mail fraud,
and breach of contact.

      My client is a hardworking, bright, and talented model who left her family and
home in Jamaica to begin a modeling career under the exclusive oversight and loyalty to
TMM. During her visa sponsorship process, TMM promised her $75,000.00 per year in
income. Her dreams and expectations were quashed as she learned that TMM was
expensing the majority of her earnings to the point where she received a check for only
$3,880.75 for the work she has done for over three years. TMM has breached its contract
to compensate my client for salaries in the amount of $75,000.00 per year pursuant to the
annexed Labor Condition Application that TMM submitted to the United States
Department of Labor in connection with H-1B process.

      My client has a viable claim for a civil cause of action under RICO and breach of
contract. She intends to report TMM's practices to the U.S. Department of Labor and to
the U.S. Department of Homeland Security. My client demands $225,000.00 in unpaid
salaries promised to her by TMM for the work she has done for TMM for three years.

**Please contact me to discuss within seven (7) days of the date of this letter to discuss my client's claim against Trump Model Management, LLC.** My client has informed me that under no circumstances is Trump Model Management, LLC authorized to contact my client directly or indirectly. Thank you for your time.

Sincerely,

Naresh Gehi, Esq.

Enc.

cc:       *Via Federal Express Overnight*
          Trump Model Management, LLC
          155 Spring Street, 3rd Floor
          New York, NY 10012

# TRUMP MODEL MANAGEMENT LLC
c/o The Trump Organization
725 Fifth Avenue
New York, New York 10022


August 13, 2014


**<u>BY FEDERAL EXPRESS</u>**

Naresh Gehi, Esq.
Gehi & Associates
The Pickman Building
118-21 Queens Blvd. Suite 411
Forest Hills, NY 11375

      Re:   *Alexia Suzett Palmer*

Dear Mr. Gehi:

I am Executive Vice President and General Counsel to The Trump Organization and its affiliated companies, including Trump Model Management LLC ("**TMM**"). I am in receipt of your demand letter dated July 18, 2014 and find Ms. Palmer's claims to be without merit.

In short, TMM has not breached any contract with Ms. Palmer because no such contract exists. While TMM did submit an application to the United States Department of Labor for a Visa for Ms. Palmer, such application is just that: an application. It is not a binding contract, does not contain any of the basic indicia of a binding contract and in no way is it enforceable as a binding contract by your client as against TMM. Based on the foregoing, TMM has no choice but to reject Ms. Palmer's claims.

If you have any questions or would like to discuss this further, I can be reached at (212) 836-3203.

Very truly yours,

Alan Garten

cc:    Corinne Nicolas
       Michael J. Wildes, Esq.