```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXIA PALMER, individually and on behalf of others similarly situated,

                  Plaintiff,

-against-

TRUMP MODEL MANAGEMENT, LLC, CORRINE NICOLAS, individually, and JANE OR JOHN DOE, individually,

                  Defendants.

14 Civ. 8307 (AT)

**MEMORANDUM**
**AND ORDER**

ANALISA TORRES, District Judge:

     Plaintiff, Alexia Palmer, brings this putative class action against Defendants, Trump Model Management, LLC ("Trump"), Corinne Nicolas,[1] President of Trump, and John or Jane Doe, CEO of Trump, alleging violations of the Fair Labor Standards Act, the Immigration and Nationality Act, and the Racketeer Influenced and Corrupt Organizations Act. Second Am. Compl. (the "complaint" or "Compl.") ¶¶ 1-2, ECF No. 24. Plaintiff also asserts claims for breach of contract, unjust enrichment, fraud, and conversion. *Id.* ¶¶ 68-93. Plaintiff alleges that, for years, Defendants have engaged in a fraudulent scheme whereby they lure foreign models to the United States with false promises of "a life of glamour in Soho clubs and on catwalks," lie to the federal government in order to obtain H-1B visas for the models, and then cheat the models out of their pay. Compl. ¶¶ 58-63; Pl. Opp. 5, 11, ECF No. 38. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion is GRANTED.

---

[1] Nicolas' first name is misspelled in the caption and body of the complaint. Second Am. Compl. ¶¶ 1, 13, ECF No. 24; Def. Mem. 1, ECF No. 37. The Clerk of Court is directed to amend the caption to reflect the correct spelling.

## BACKGROUND[2]

Pursuant to a contract between Trump and Plaintiff, from January 2011 to May 2014, Plaintiff "worked as a model on modeling contracts" arranged by Defendants. Compl. ¶ 30; Pl. Opp. Ex. F. Plaintiff claims that she signed, "under duress," a "separate contract," the Trump "Model's Loan Agreement," which obligates her to pay for certain expenses and permits Trump to deduct unpaid amounts from her paycheck. Compl. ¶¶ 37, 38, 44; Rosen Decl. Ex. E, ECF No. 36-5.

When Trump offered the modeling opportunity to Plaintiff, she resided in Jamaica, her native country. Pl. Opp. 6. On April 15, 2011, Defendants submitted to the U.S. Department of Homeland Security a letter requesting an H-1B visa for Plaintiff—a visa which permits U.S. employers to temporarily employ foreign "fashion model[s] . . . of distinguished merit and ability." 8 U.S.C. § 1101(a)(15)(H)(i)(b); Compl. ¶ 36; Pl. Opp. Ex. D. Attached to the letter was a Labor Condition Application for Nonimmigrant Workers certified by the U.S. Department of Labor, a form employers must file to obtain an H-1B visa for prospective workers.[3] Pl. Opp. Ex. B. The labor application states that Defendants will pay Plaintiff $75,000 per year, and that the "prevailing wage"[4] is $45,490. Compl. ¶ 36; Pl. Opp. Ex. B.

---

[2] The following facts are primarily taken from the complaint and accepted as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Some background facts are also drawn from Plaintiff's opposition papers. In addition, the Court has considered Exhibit E to the Declaration of Lawrence S. Rosen in Support of Defendants' Motion to Dismiss ("Rosen Decl."), ECF No. 36, and the exhibits to Plaintiff's opposition brief, because Plaintiff relies on these documents in framing her complaint or incorporates them in the complaint by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

[3] *See* 8 U.S.C. § 1182(n); 20 C.F.R. § 655.700.

[4] The "prevailing wage" is defined generally as the "arithmetic mean of the wages of workers similarly employed." 20 C.F.R. § 655.731(a)(2)(ii).

From approximately January 2011 to December 2013, Plaintiff worked on 21 different projects arranged by Trump. Compl. ¶¶ 30-31. Defendants withheld the "twenty percent (20%) agency fee[] and charged [] Plaintiff" for "obscure expenses." *Id.* ¶ 32. Plaintiff was required to pay for "walking lessons," "numerous, unnecessary cosmetics kits," and "expensive limousines." *Id.* ¶ 34.

"After the deduction of all agency fees, expenses, and allowance[s]," Plaintiff was paid $3,880.75 for her work from 2011 to 2013. *Id.* ¶ 35. Plaintiff alleges that, "as evidenced in the [labor] application," Defendants "promis[ed] to pay her $75,000 per year," *id.* ¶ 41, but instead "took more than 80% of [] Plaintiff's hard earned money by cloaking it as 'expenses,'" *id.* ¶ 40. She also claims that "Defendants failed to pay her even the prevailing wage of $45,490 per year as required by [i]mmigration laws." *Id.* ¶ 41.

## DISCUSSION

I.   Motion to Dismiss Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint or incorporated in it by reference, matters of which a court can take judicial notice,

3

or documents that the plaintiff knew about and relied upon in bringing the suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II.     FLSA Claim

Plaintiff claims she was not paid the minimum wage required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Compl. ¶¶ 46-53. The FLSA provides that every employer must pay each employee a minimum of $7.25 an hour. 29 U.S.C. § 206(a). An employee cannot state a claim for a minimum wage violation unless she alleges facts showing that her "average hourly wage falls below the federal minimum wage." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). A plaintiff's average hourly wage is determined "by dividing [her] total remuneration for employment . . . in any workweek by the total number of hours actually worked by [her] in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. The FLSA also obligates employers to reimburse employees for costs incurred "primarily for the benefit or convenience of the employer" if such expenses "cut[ ] into the minimum or overtime wages required to be paid . . . under the Act." 29 C.F.R. §§ 531.32(c), 531.35; *see also Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511-12 (S.D.N.Y. 2010).

Plaintiff's minimum wage claim fails. Plaintiff alleges only that Defendants paid her $3,880.75 for work she performed over a period of three years. Compl. ¶ 49. She does not specify the number of hours worked. Further, Plaintiff does not dispute Defendants' claim that

4

she was paid above the minimum wage. *See* Def. Mem. 5-6. Indeed, Plaintiff merely responds, in opposition to Defendants' motion to dismiss, that she "expected that she would be given sufficient hours to work [but] was not. . . . Defendants promised . . . Plaintiff a certain amount of work, and promised that she would be compensated fairly—graciously, in fact—for the work. Then, for reasons unstated, they failed to provide that much work; they failed, in fact, to provide work almost at all. . . . [T]hey just stopped giving her the hours which would lend themselves to such calculation." Pl. Opp. 9-10.

Because Plaintiff does not "allege facts about her salary and working hours, such that a simple arithmetical calculation [could] be used to determine the amount owed per pay period," *Casci v. Nat'l Fin. Network, LLC*, No. 13 Civ. 1669, 2015 WL 94229, at *4 (E.D.N.Y. Jan. 7, 2015) (quoting *Tackie v. Keff Enters. LLC*, No. 14 Civ. 2074, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014)), her conclusory minimum wage allegations are insufficient to raise "more than a mere possibility of a right to relief," *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013). Therefore, Plaintiff's FLSA claim cannot stand.[5] *See Bojaj v. Moro Food Corp.*, No. 13 Civ. 9202, 2014 WL 6055771, at *3 (S.D.N.Y. Nov. 13, 2014) (dismissing FLSA and state law minimum wage claims where complaint alleged "neither the hours of [the plaintiff's] employment with [the defendant], nor the

---

[5] Defendants also dispute that Plaintiff qualifies as an "employee" under the FLSA. Def. Mem. 4; Def. Reply 4 n.3, ECF No. 41; *see also* Compl. ¶ 47 (alleging that "there was an employer-employee relationship between [] Plaintiff and [] Defendants"). Only employees may sue under the FLSA. *See* 29 U.S.C. § 216. The FLSA defines an "employee" as "any individual employed by an employer," and to "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), 203(g). "The definition is necessarily a broad one in accordance with the remedial purpose of the Act." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988). Because the Court concludes that Plaintiff's failure to allege the hours she worked is fatal to her FLSA minimum wage claim, the Court need not reach this question.

payments that amounted to compensation below the state or federal minimum wage"); *Casci*, 2015 WL 94229, at *4.

Accordingly, Plaintiff's FLSA claim is DISMISSED.

III.   RICO Claim

Plaintiff's second cause of action alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*[6] Compl. ¶¶ 54-67. Specifically, Plaintiff claims that Defendants devised and carried out a fraudulent scheme to deprive her and other foreign models of a promised salary of $75,000 per year. *Id.* ¶¶ 57-59, 62-64. To accomplish their scheme, Plaintiff alleges, Defendants submitted to the federal government sham H-1B visa applications stating that Defendants would pay the models $75,000 when "Defendants had no intention of doing so."[7] *Id.* ¶¶ 61-63. Plaintiff claims that, instead of paying Plaintiff the promised wages, Defendants "took more than 80% of [her] hard earned money by cloaking it as 'expenses.'" *Id.* ¶¶ 59, 63. Plaintiff alleges that she relied to her detriment on the promised $75,000 salary by forgoing other work. *Id.* ¶ 60.

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, an employer seeking to hire an "alien"[8] in a "specialty occupation . . . or as a fashion model," may obtain an H-1B visa for the prospective worker by satisfying certain requirements. *Id.* §

---

[6] Plaintiff alleges that Defendants also violated provisions of the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq., see* Compl. ¶ 2, but does not bring a separate cause of action under that statute.

[7] Plaintiff alleges that the mailing of these fraudulent visa applications constituted acts of mail fraud, which serve as the predicate acts underlying her RICO claim. Compl. ¶¶ 56-57, 61, 67; *see Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481 (1985) ("RICO takes aim at 'racketeering activity,' which it defines as," *inter alia,* "any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud" (citing 18 U.S.C. § 1961(1))).

[8] The INA defines "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

1101(a)(15)(H)(i)(b). First, the employer is obligated to file with the U.S. Department of Labor ("DOL"), and obtain the DOL's certification of, a Labor Condition Application for Nonimmigrant Workers. 20 C.F.R. § 655.700(b)(1). The labor application must specify, among other things, the "wage rate and conditions under which [the worker] will be employed." 8 U.S.C. § 1182(n)(1). Second, after securing DOL certification, the employer is required to submit an H-1B visa petition, together with the certified labor application, to the Department of Homeland Security ("DHS") for approval. 20 C.F.R. § 655.700(b)(2).[9]

A worker, such as Plaintiff, who believes that her employer lied on a labor application by overstating her wages, may seek redress by following the specific steps laid out in Section 1182(n) of the INA, the section that governs labor applications.[10] Under Section 1182(n), an aggrieved[11] worker must file a complaint with the Wage and Hour Division of the DOL, which investigates the complaint and then issues a determination as to whether the employer has violated the labor application rules. *See* 8 U.S.C. § 1182(n)(2); 20 C.F.R. §§ 655.805–655.806, 655.815. If the worker is dissatisfied with the result, she may request a hearing before an administrative law judge who will issue a decision. 20 C.F.R. §§ 655.815, 655.820, 655.840. Thereafter, either party may petition for review by the Secretary of Labor ("SOL"). *Id.* §§

---

[9] The determination of whether the H-1B visa will be issued is delegated to the DHS and is governed by DHS regulations. *See* 20 C.F.R. § 655.700(b)(2)-(3).

[10] Subsection 1182(n)(2)(C) specifically provides for remedies if an employer is found by the Secretary of Labor to have failed to meet a condition, or made a misrepresentation of material fact, in the labor application. The DOL delegates authority to the DOL Administrator to investigate, among other things, the failure of an employer to pay required wages. 20 C.F.R. §§ 655.800, 655.805(a)(2).

[11] An "aggrieved party" includes "[a] worker whose job, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor [] application." 20 C.F.R. § 655.715.

655.840, 655.845. The SOL's decision may then be appealed to the appropriate federal district court. *Id.* § 655.850.

Plaintiff did not attempt to voice her grievances against Defendants by utilizing the INA's complaint procedures described above.[12] Instead, in this lawsuit she casts Defendants' alleged violation of the INA—lying on the labor application about the wages Defendants intended to pay Plaintiff—as a RICO violation. The RICO statute, however, is not the proper avenue for relief.

Rather, INA Section 1182(n) sets forth the specific administrative remedies available to an H-1B worker. As courts in this Circuit have held, the INA's complaint process "indicate[s] Congress' clear intent to limit enforcement of alleged violations to administrative mechanisms before resort can be had to a court action." *Biran v. JP Morgan Chase & Co.*, No. 02 Civ. 5506, 2002 WL 31040345, at *2 (S.D.N.Y. Sept. 12, 2002).[13] Because she has failed to exhaust the administrative procedures set forth in Section 1182(n), Plaintiff is barred from asserting an INA claim in this court.

Moreover, it is well-established that "a precisely drawn, detailed statute pre-empts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007). Where Congress has devised a law, such as the INA, with a "careful blend of administrative and judicial enforcement

---

[12] Plaintiff states only that she "intends to pursue those remedies as well." Pl. Opp. 11.

[13] *See also Biran*, 2002 WL 31040345, at *3 ("Not only do comprehensive administrative mechanisms exist, but also the legislative history of the [INA] yields no support for the proposition that Congress intended to create a private right of action in [S]ection[] 1182(n)."); *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 647-48 (S.D.N.Y. 2000) (describing the "comprehensive regulatory enforcement scheme" contained in Section 1182(n) for the investigation of complaints "concerning an employer's alleged failure to satisfy the enumerated requirements of a labor condition application," and finding no "private right of action in federal court in the first instance for" such complaints).

8

powers," this principle leads "unerringly to the conclusion that [the statute] provides the exclusive judicial remedy for claims" falling within its scope. *Brown v. GSA*, 425 U.S. 820, 833-35 (1976). Courts in this Circuit have routinely precluded RICO claims where the alleged conduct is already covered by a more detailed federal statute. *See, e.g.*, *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637-38 (2d Cir. 1989) (affirming dismissal of RICO claim where complaint, "distilled to its essence, alleges no more than that appellants were discriminated against for having made complaints about safety at a nuclear plant," after concluding that Section 210 of the Energy Reorganization Act was the exclusive federal remedy for such a claim).[14] Here, Plaintiff's RICO claim, which is based on Defendants' alleged misrepresentations in her labor application, falls squarely within the scope of the INA. Allowing Plaintiff to use the civil RICO statute to redress substantive violations of the INA "would thwart Congress'[] careful, comprehensive scheme to remedy" violations falling within the INA's scope. *Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 490 (W.D.N.Y. 2012).

Accordingly, Plaintiff's RICO claim is DISMISSED.

IV.   State Common Law Claims

Plaintiff also asserts common law claims for breach of contract, unjust enrichment, fraud, and conversion. Compl. ¶¶ 7, 68-93. Having dismissed Plaintiff's federal law claims, the Court

---

[14] *See also DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 515 (E.D.N.Y. 2011) (finding RICO claim preempted because, *inter alia*, "allowing plaintiffs to pursue a civil RICO claim grounded in the same facts as plaintiffs' FLSA claim would, essentially, create a new private right of action that would allow plaintiffs to seek treble damages—instead of . . . unpaid wages and liquidated damages—and would render meaningless [the FLSA's remedial provisions]"); *Eldred v. Comforce Corp.*, No. 08 Civ. 1171, 2010 WL 812698, at *10 (N.D.N.Y. Mar. 2, 2010) (finding RICO claim precluded as duplicative of FLSA claim, and noting that "[t]his approach ensures that the '[a]rtful invocation of controversial civil RICO, particularly when inadequately pleaded' does not endanger the uniform administration of core concerns of the primary enforcement scheme" (quoting *Norman*, 873 F.2d at 637)).

declines to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. 1367(c). *See Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir. 1989) ("[I]n light of the proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over [the plaintiff's] state-law claims against the County.").

Accordingly, Plaintiff's breach of contract, unjust enrichment, fraud, and conversion claims are DISMISSED without prejudice to renewal in state court.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to (1) terminate the motion at ECF No. 35, (2) amend the caption to reflect the correct spelling of Nicolas' name, and (3) close the case.

SO ORDERED.

Dated: March 23, 2016
      New York, New York

                                     ANALISA TORRES
                                United States District Judge